IN RE APPLICATION OF ATS MOBILE TELEPHONE, INC.
ATS MOBILE TELEPHONE, INC., APPELLANT, V.
NORTHWESTERN BELL TELEPHONE COMPANY,
CHARLES P. ODEN, DOING BUSINESS AS NEBRASKA RADIO
TELEPHONE SYSTEMS, AND THE LINCOLN TELEPHONE
AND TELEGRAPH COMPANY, APPELLEES.

330 N.W.2d 123

Filed January 28, 1983.   No. 81-593.

404

Donald H. Erickson of Erickson, Sederstrom, Leigh, Eisenstatt, Johnson, Kinnamon, Koukol & Fortune, P.C., for appellant.

Richard A. Peterson of Peterson, Bowman & Johanns, for appellee Oden.

KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

HASTINGS, J.
ATS Mobile Telephone, Inc. (hereinafter ATS),

filed an application with the Public Service Commission (hereinafter Commission) on July 28, 1978, for authority to operate a simulcast wide area one- and two-way mobile telephone service. Objections to this application were raised by the appellees, Northwestern Bell Telephone Company, Nebraska Radio Telephone Systems, and The Lincoln Telephone and Telegraph Company. A hearing was held on this matter by the Commission on October 24 through 27, 1978. The Commission found that ATS made an insufficient showing of public need and interest in this service; that the grant of application No. 32450 of Nebraska Radio Telephone Systems, on May 15, 1979, gave adequate service to the proposed area; that to grant ATS additional frequencies on which to operate is not in the best interest of the public; and that to extend ATS' monopoly over the Omaha market to the Lincoln area is not in the best interest of the public. Therefore, ATS' application was denied by order of the Commission on May 5, 1981. For reasons set forth in greater detail below, we affirm the Commission's denial of this application.

ATS presently operates a one- and two-way mobile telephone and paging service for Omaha and the surrounding 35-mile area. It is operating on 17 of the 27 available radio frequencies. ATS' application proposed the offer of a wide area service. In short, this service would offer mobile telephone and paging service in and between Omaha and Lincoln. In order to facilitate this service ATS would construct two signal sending stations, one in Omaha and one in Lincoln. Each station would have an effective range of 35 miles, thus overlapping the distance between Omaha and Lincoln. This system would also offer local service for any user located in Omaha or Lincoln. Both stations would simulcast signals so a party with this service traveling between Omaha and Lincoln could be reached at any point between the two cities. This system would require the use of four more of the remaining few frequencies avail-

able for use in this area under the rules of the Federal Communications Commission.

ATS has assigned a number of errors to the findings of the Commission. It is claimed that there is no basis in the record to support the decision of the Commission; that the Commission considered evidence outside the record; and that the Commission ignored parts of the record. ATS also claims the Commission improperly applied the "public interest" standard when reaching its decision with regard to the extension of ATS' monopoly to the Lincoln area. ATS argues these to be errors by the Commission requiring reversal.

When urging that the Commission relied on matters outside the record, ATS points to two findings the Commission made in paragraph 14 of its opinion and findings, which reads: "14. The expansion into Lincoln at this time by another radio common carrier is simply not warranted. Application No. 32450 was granted by the Commission on May 15, 1979, which established a radio common carrier in Lincoln, Nebraska. This common carrier will be able to serve the needs of transient two-way mobile subscribers in the Lincoln area. The proposed service can now be provided in the Omaha area by applicant and in the Lincoln area by the carrier authorized under Application No. 32450. To authorize an additional service would result in the unnecessary duplication of facilities. There is no evidence to indicate that the existing service is not reasonably adequate or how in any manner the proposed service would be more beneficial than that presently existing."

ATS argues the grant of application No. 32450, that of Nebraska Radio Telephone Systems, and the service to be provided thereby, is not in the record. This, it is claimed, is therefore an improper basis for the decision of the Commission.

Application No. 32450 was filed by Charles Oden and Nebraska Radio Telephone Systems (hereinafter NRTS) on September 23, 1977. NRTS' applica-

tion requested authority to provide one- and two-way mobile service for the Lincoln-Lancaster County area. A hearing was held and the decision of the Commission on that application was pending at the time of ATS' application and hearing.

Whether these matters were properly relied upon by the Commission in its decision depends upon whether or not the Commission may take judicial notice of them. The rule in Nebraska is set forth by the Administrative Procedures Act, Neb. Rev. Stat. § 84-914(5) (Reissue 1981): "An agency may take notice of judicially cognizable fact and in addition may take notice of general, technical, or scientific facts within its specialized knowledge. *Parties shall be notified either before or during the hearing, or by reference in preliminary reports or otherwise, of the material so noticed.* They shall be afforded an opportunity to contest the facts so noticed. An agency may utilize its experience, technical competence, and specialized knowledge in the evaluation of the evidence presented to it." (Emphasis supplied.) This act applies to the Public Service Commission by definition. "As used in sections 84-901 to 84-916: (1) Agency shall mean each board, commission, department, officer, division, or other administrative office or unit of the state government authorized by law to make rules . . . ." Neb. Rev. Stat. § 84-901 (Reissue 1981).

The policy behind this rule is clear. Fair warning of the Commission's intention to take notice of a fact or matter not in evidence must be given to the parties so as to allow them to address the matter in question at their hearing. This prevents any prejudice or surprise to the parties. The parties are to be given a chance to comment on or rebut any evidence considered by the Commission when making its decision.

In this case no specific prior notice was given by the Commission of its intention to take note of this application and the service it would provide. None-

theless, the question remains: Did ATS have a full and fair opportunity at its hearing to present evidence on the point and thereby refute the findings of the Commission on this matter?

First, with respect to the Commission's taking notice of the grant of the NRTS application, the record indicates that there was testimony at the hearing as to the existence of this pending application. Charles Oden, owner and general manager of NRTS, testified at length with regard to his application. ATS had a full opportunity to cross-examine him as to that application and put on any evidence it desired with regard to it. ATS had the chance to rebut and comment on this evidence, as is required by § 84-914. Therefore, we find that even though the Commission's method of taking notice of this granted application may have been technically improper, the policy behind that rule has been fully met. Since ATS had a full and fair opportunity to address the matter of NRTS' application, they have not been prejudiced or unfairly surprised by the Commission's taking judicial notice thereof.

Secondly, as to the Commission's finding on what service would be supplied, the Commission found that the grant of the ATS application would only duplicate existing service provided as a result of the granting of NRTS' application. This, ATS claims, has no support in the record and was therefore an improper basis for the Commission's decision.

This argument fails for two reasons: First of all, there was discussion as to whether this service could be offered by two separate entities. Mr. Johnson, chief witness for ATS, on cross-examination testified that the system as proposed by ATS could be offered by two separate entities, one in Lincoln and one in Omaha. After describing in technical detail the workings of the proposed system, Johnson testified as follows: "Q No, I said, if they were independently owned. If the Omaha transmitter and the Lincoln transmitter are independently owned, and

the system is in all other respects identical, it would function just exactly as you've described it, would it not? A Okay. Let's — this — any one of these boxes could be owned by any third party, and it wouldn't change it, as long as the hardware is still configured in this fashion. I mean — Q The answer to my question, then, is yes. A Yes."

Mr. Charles Oden on direct examination agreed that this system could be operated as ATS proposed and yet owned by two separate entities. "Q Now, Mr. Oden, when Mr. Johnson was on the stand, and testified with respect to his diagrams of the paging system, and the two-way system, he testified, as I recall, that the systems, the respective elements of the systems, did not know who owned them, and that the system could operate under independent ownership. Do you subscribe to that view, or — or do you differ with Mr. Johnson in that respect? A No, I — I agree to that view."

There is evidence in the record supporting the finding that this service could be offered by NRTS if its then pending application No. 32450 was granted. NRTS could operate the Lincoln portion of the system while ATS operated the Omaha segment.

Secondly, ATS' complaint that it was deprived of an opportunity to present evidence on the question of whether or not this service would in fact be provided by NRTS is not correct. ATS did in fact have an opportunity to present such evidence if it had chosen to do so at the hearing. After agreeing that this system could be offered by two separate entities, Mr. Oden was asked: "Q Now, that prompts me then to ask, Mr. Oden, what — do you have any intention or, if your own application is granted, as to your willingness to cooperate with ATS, or any other R.C.C., in terms of providing wide area one and two-way mobile telephone service?" This question opened the area up to full examination before the Commission. If ATS had wished to present evidence on this area to show that NRTS was incapable of

providing the same service which ATS proposed, it could have done so. At this point ATS had a full opportunity to deal with the question, thus giving ATS the opportunity to rebut this matter, as the Administrative Procedures Act's judicial notice statute requires. However, counsel for ATS objected to this question and thereby foreclosed the area to further discussion. ATS now complains that it did not have an opportunity to present evidence on this matter at the hearing, when in fact it was its own objection which kept it from being able to do so.

To remand this case to the Commission for further proceedings would give ATS no greater opportunity than it already has had. It had an opportunity to present evidence on the nature of NRTS' application and NRTS' ability and willingness to supply the service in question. Therefore, ATS has not been prejudiced by this action. No reversible error has been committed.

ATS also contests the Commission's finding that there was not a sufficient showing of public need. In support of this application ATS called a number of witnesses, producing a great deal of testimony and exhibits to show public need. Nine private businessmen testified that they would be interested in utilizing the proposed service in their businesses. Four expert witnesses and Mr. Marc Cohen of the Omaha Chamber of Commerce gave evidence showing a great deal of growth in the economic and residential development of, as well as the travel in, the area between Omaha and Lincoln. Mr. Larry Cale was called to testify as to a survey taken of 2,000 present users of ATS' service, 4,558 members of the general public by direct mailing, 72 people surveyed by telephone, and people responding to an advertisement run in the Lincoln Journal-Star. From this newspaper advertisement and the 6,630 people contacted directly, 425 people responded indicating some interest in the wide area service. Mr. Frank Rizzuto, a certified public accountant and the treas-

urer of ATS, testified as to the financial aspects and feasibility of this proposed service.

The Commission found this showing of need to be insufficient to support the allocation of four more channels to ATS. There was evidence in the record that there are few frequencies left unassigned in this area. The Commission simply found that the number of potential users of this system did not justify the allocation and exclusive use of these four frequencies to this proposed service. The Commission determined that the use of these four frequencies for these few interested people simply is not in the best interest of the public. This is a decision to be made by the Commission and not this court.

"As we have often said, this determination by the Commission is a matter peculiarly within its expertise and involves a breadth of judgment and policy determination that will not be disturbed by this court in the absence of a showing that the action of the Commission was illegal or arbitrary, capricious, and unreasonable. The striking of the balance between the competing interests of legitimate competition and the protection of the public interest are matters of legislative and administrative determination peculiarly resting in the judgment of the Commission. [Citation omitted.] . . . 'The determination of the public interest in such a case is one that is peculiarly for the determination of the commission. If there is evidence to sustain the finding of the commission, this court cannot intervene.' " *Robinson v. National Trailer Convoy, Inc.,* 188 Neb. 474, 475-76, 197 N.W.2d 633, 635 (1972).

ATS also complains the Commission misconstrued the public policy of the state when it found that to extend ATS' monopoly over radio and mobile telephone service in Omaha to the Lincoln area is contrary to the best interest of the public. The Legislature has prescribed by statute what the Commission is to consider in cases such as this. "No person, firm, partnership, corporation, cooperative, or

association shall offer telephone service or shall construct a new telephone line in or extend an existing telephone line into the territory of another telephone company without first making an application for and receiving from the commission a certificate of convenience and necessity, after due notice and hearing under the rules and regulations of the commission. Before granting a certificate of convenience and necessity, the commission must find that (1) the territory in which the applicant proposes to offer telephone service is not receiving reasonably adequate telephone service, (2) that the portion of the territory of another telephone company in which or into which the applicant proposes to construct new lines or extend its existing lines is not and will not within a reasonable time receive reasonably adequate telephone service from the telephone company already serving the territory, or (3) the application is agreeable to the subscriber or subscribers and to both telephone companies involved in the matter, will not create a duplication of facilities, and is in the interest of the public and the party or parties requiring telephone service." Neb. Rev. Stat. § 75-604 (Reissue 1981).

The Commission did consider these matters. The territory involved in this case is receiving reasonably adequate service. The Commission found NRTS is able to offer adequate service to this area. The Commission also found that NRTS can extend the service in question here. Finally, the Commission found that the grant of ATS' application would create a duplication of service. There was evidence to support these findings. As discussed above, the testimony of Johnson and Oden supports the findings that NRTS could offer the service here in question. Also, the grant of NRTS' application now enables it to offer this service in conjunction with ATS. Johnson also testified that the proposed service by ATS would offer local mobile service in Omaha and Lincoln, as well as wide area service. Under NRTS'

presently granted authority, this proposal would also duplicate existing local service in Lincoln.

These findings are sufficient to support the denial of the ATS application under § 75-604. The finding that the extension of ATS' monopoly over the mobile telephone service in Omaha to the Lincoln area is not in the best interest of the public was not a necessary finding by the Commission to justify its denial of this application. While it may or may not be objectionable, it is not necessary to this decision and therefore cannot be seen as reversible error. The other findings of the Commission were sufficient under this statute and were supported by evidence in the record.

As we have uniformly held in the past: '' 'Whether we agree or disagree with the decision of the commission, however, is immaterial. It is not the province of this court to weigh or resolve conflicts in the evidence, or the credibility of witnesses. The Supreme Court does not act as an appellate public service commission but will sustain the action of the commission if there is evidence in the record to support it.

'' 'The issue of public convenience and necessity is ordinarily one of fact and where there is evidence in the record to sustain the Public Service Commission's order, this court cannot say that it is unreasonable and arbitrary. The determination of what is consistent with the public interest, or public convenience and necessity, is one that is peculiarly for the determination of the Public Service Commission.' '' *In re Application of Crusader Coach Lines, ante* p. 53, 58-59, 327 N.W.2d 98, 101 (1982).

Since there is competent evidence to support the findings of the Commission, its decision must be affirmed.

AFFIRMED.

CLINTON, J., not participating.