IN RE APPLICATION OF NORTHWESTERN BELL TELEPHONE
COMPANY, OMAHA, NEBRASKA.
NORTHWESTERN BELL TELEPHONE COMPANY, APPELLANT, V.
NEBRASKA PUBLIC SERVICE COMMISSION, APPELLEE.

357 N.W.2d 443

Filed November 2, 1984.   No. 83-101.

Melvin R. Quinlan and Richard L. Johnson, for appellant.

Paul L. Douglas, Attorney General, and John Boehm, for appellee.

KRIVOSHA, C.J., and CAPORALE, J., and SPENCER, McCOWN, and BRODKEY, JJ., Retired.

KRIVOSHA, C.J.

Northwestern Bell Telephone Company of Omaha, Nebraska (Northwestern Bell), appeals from an order entered by the Nebraska Public Service Commission which, after appropriate hearing, determined that Northwestern Bell is

entitled to a rate of return of 11 percent on its base rate. In order to produce such a rate of return, Northwestern Bell was authorized to increase its revenues in the amount of $8,032,684. Northwestern Bell, maintaining it was entitled to a higher rate of return, had sought an increase in the amount of $42,700,000. On appeal Northwestern Bell maintains that the Public Service Commission committed eight errors. The errors as listed by Northwestern Bell are the following:

1. The order of the commission requiring the continued capitalization of station connections is an attempt to exercise regulatory powers delegated exclusively to the Federal Communications Commission and is unconstitutional and contrary to federal law.

2. The commission has been arbitrary and capricious in applying its rule against the expensing of station connections.

3. The order of the commission disallowing Northwestern Bell's April and August 1982 wage increases in adjusting the test year was arbitrary and unreasonable and in violation of the commission's own rules.

4. The commission had no legal basis for arbitrarily limiting Northwestern Bell's license contract expenses for the test year to 1 percent of revenues.

5. The commission acted arbitrarily and unreasonably in finding that there was no cash working capital requirement for Northwestern Bell in this case.

6. The commission erred in failing to give Northwestern Bell credit for all of its 1981 federal income taxes by imputing to Northwestern Bell a theoretical interest deduction.

7. The commission erred in disallowing the amortization of one-tenth of the interest on short-term construction projects for the period of January 1, 1979, through April 30, 1980, and in removing from the rate base the unamortized portion of such interest.

8. The commission failed to grant Northwestern Bell a fair rate of return on its Nebraska intrastate investment.

In addressing each of these issues we must keep in mind that it is not the function of this court to second-guess the Public Service Commission or to make independent findings. Determinations by the Public Service Commission are a matter

peculiarly within its expertise and involve a breadth of judgment and policy determination that will not be disturbed by this court in the absence of a showing that the action of the Public Service Commission was illegal, arbitrary, capricious, or unreasonable. The striking of the balance between the competing interests of legitimate competition and the protection of the public interest are matters of legislative and administrative determination peculiarly resting in the judgment of the Public Service Commission. If there is evidence to sustain the findings of the Public Service Commission, this court cannot substitute its judgment therefor. See, *In re Application of ATS Mobile Telephone*, 213 Neb. 403, 330 N.W.2d 123 (1983); *Robinson v. National Trailer Convoy, Inc.*, 188 Neb. 474, 197 N.W.2d 633 (1972). Whether we agree or disagree with the decision of the Public Service Commission is immaterial. It is not the province of this court to weigh or resolve conflicts in the evidence or the credibility of witnesses. The Supreme Court does not act as an appellate public service commission, but will sustain the action of the commission if there is evidence in the record to support it. See *In re Application of Crusader Coach Lines*, 213 Neb. 53, 327 N.W.2d 98 (1982). See, also, *In re Application of Hunt Transportation*, 214 Neb. 236, 333 N.W.2d 883 (1983). With these principles in mind we turn to an examination of the assignments of error.

*Errors Nos. 1 and 2—Station Connections.*

With regard to the first two assignments of error involving the station connections, the Public Service Commission now concedes that federal law preempts this area, and, therefore, the commission may not deny to Northwestern Bell the right to expense the costs associated with installing station connections. The commission's order requiring Northwestern Bell to capitalize the cost of station connections is therefore in error and Northwestern Bell must be permitted to expense these costs. By reason of the concession of the commission, we need not further consider the first two assignments of error.

*Error No. 3—Wage Increases and the Test Year.*

We turn, then, to assignment No. 3. In an effort to determine what costs should be considered for the year in which the rate increase was sought, Northwestern Bell submitted the costs for

the year ending December 1981. This is what is known as the "test year." The purpose of a test year is to determine future performance. However, it is expected that certain changes will occur in the economy, and therefore, while using a test year to assess necessary rates for the future, it is an acceptable practice to make adjustments for the test year when those adjustments are known. In other words, to "update the test year" and to account for known expenses, known expenses occurring after the test year may be included in the formula. As a matter of fact, the Public Service Commission has a specific rule regarding this matter. Rule 24(1)(b), Rules of Comm. Proc., reads in part as follows:

> Adjustments will be made to test year data to reflect changes in costs occurring during the test year but not reflected in test year data, and known changes in costs occurring *subsequent* to the test year. All known decreases in costs, as well as increases will be included in the adjustments made.

(Emphasis supplied.) The evidence reflects that by the time the hearing was held in September of 1982, two wage increases were in fact being paid by Northwestern Bell, one having become effective in April of 1982 and the other in August of 1982. Nevertheless, the Public Service Commission refused to permit Northwestern Bell to adjust the test year to reflect these two increases. While the order entered by the commission on January 11, 1983, does not give any reason why the wage increases were disallowed, contrary to commission rule 24(1)(b), the commission now argues that such disallowance was reasonable because Northwestern Bell did not include in its adjustments to the test year all known adjustments, but only selected those which it desired. The difficulty with that argument is that the record does not reflect that there are any other significant adjustments which were not otherwise taken into account. To argue that known adjustments may not be made as otherwise required by rule because the evidence does not disclose that all adjustments were included is to beg the question. One must assume that, absent evidence presented either by Northwestern Bell or by staff appointed by the Public Service Commission to cross-examine, all of the significant,

known adjustments were taken into account. It is difficult to imagine how one proves the absence of a fact. Actually, the evidence appears to be to the contrary. The division staff manager-finance for Northwestern Bell testified that he made both favorable and unfavorable adjustments to the operating expenses, including one adjustment where he treated a rate increase which was in effect for only a 2-month period as if it had been in effect for 12 months. The Public Service Commission accepted this revenue adjustment but disallowed the wage adjustments.

The commission's staff had full opportunity to cross-examine Northwestern Bell's witness and could have easily determined what, if any, adjustments should have been included. Absent evidence to establish what those omissions were, it cannot be said that a known, significant adjustment such as a wage increase in effect at the time of the hearing should be disregarded, contrary to the commission's own rule. We must find that the commission's ruling disregarding the wage adjustments, contrary to the Public Service Commission's rule 24(1)(b), was arbitrary and capricious and that the wage increases should be included in Northwestern Bell's operating results.

*Error No. 4—License Fees.*

The next item involves the payments made by Northwestern Bell to its then parent corporation, AT&T. Many years ago, Northwestern Bell and AT&T entered into a license contract whereby AT&T granted to Northwestern Bell the right to use AT&T's patents, research and development, general business advice, and general financial advice. On October 1, 1974, it was determined that AT&T would accept as payment for license contract rights and services an amount equal to Northwestern Bell's share of total costs incurred by AT&T in furnishing these services to Northwestern Bell, not to exceed a maximum of $2\frac{1}{2}$ percent of revenues, less uncollectibles. In 1981 Northwestern Bell paid AT&T as a license contract fee an amount somewhere between 2.3 and 2.4 percent of its revenues, less uncollectibles. The commission disallowed the payment and instead limited Northwestern Bell to a payment equal to 1 percent of revenues, less uncollectibles. According to the commission's order, "this

adjustment is appropriate because of the lack of probative evidence supporting the license contract payments, the concern evidenced by the operating companies about the level of expenditures, and their lack of control over such expenditures."
In essence, what we are asked to determine is whether the commission's action in limiting the license fee actually paid by Northwestern Bell to an amount equal to 1 percent of revenues, less uncollectibles, can be supported by anything in the record or whether the commission's action in limiting payment to 1 percent is arbitrary or capricious.

If the commission had found that the record failed to support payment of 2.3 percent and therefore disallowed all payment, one might make some argument in support of the commission's actions. But where, as here, the commission disallows an actual payment of 2.3 percent because it contends the payment is arbitrary and then itself imposes a payment of 1 percent with no other evidence, we must conclude that the imposition of the 1 percent is likewise arbitrary or capricious and cannot be permitted. The question is not whether the action of the commission in allowing a payment of 1 percent may stand. That action clearly cannot be supported by anything in the record and must be considered arbitrary. Rather, the question is whether the record supports the payment of 2.3 percent plus, and therefore whether Northwestern Bell should be permitted to take credit for the payment actually paid. We believe the record does support such action.

The testimony, as presented at the hearing, established that AT&T provided Northwestern Bell with a host of services, the reasonable value of which was $52.4 million. The evidence further discloses that the amount actually paid by Northwestern Bell to AT&T was $5.9 million. The commission argues that the cost of certain services for which payment was made should more appropriately be shared by the stockholders and not borne exclusively by the ratepayers. While this may be true, in view of the fact that the undisputed evidence is that Northwestern Bell paid only about 10 percent of the cost of all the services received, and some, if not all, of the services were of benefit to Northwestern Bell ratepayers, absent evidence to the contrary, we cannot say that the payment by Northwestern Bell

was unreasonable and should have been disregarded by the commission. As noted by the U.S. Supreme Court in the case of *S. W. Tel. Co. v. Pub. Serv. Comm.*, 262 U.S. 276, 289, 43 S. Ct. 544, 67 L. Ed. 981 (1923):

> "The commission is not the financial manager of the corporation and it is not empowered to substitute its judgment for that of the directors of the corporation; nor can it ignore items charged by the utility as operating expenses unless there is an abuse of discretion in that regard by the corporate officers."

Where, as here, there is no evidence to support the commission's finding other than a general feeling by the commission, we must hold that its disregard of the amount actually paid and a substitution therefor of 1 percent was arbitrary and capricious and cannot stand. Northwestern Bell should have been permitted to take full credit for the amount actually paid by it to AT&T under its license contract. See, also, *West Ohio Gas Co. v. Comm'n. (No. 1).*, 294 U.S. 63, 55 S. Ct. 316, 79 L. Ed. 761 (1935); *Northwestern Bell Telephone Co. v. Spillman*, 6 F.2d 663 (D. Neb. 1925).

The commission's assertion that Northwestern Bell may not, because of a lack of probative evidence, include in its rate base the payment actually made to AT&T fails to recognize what in fact is reflected by the record concerning benefits to ratepayers. The only probative evidence is that the amount was paid and that numerous services were obtained, many of which were clearly for the benefit of the ratepayers. That it was not reasonable, in whole or in part, is a conclusion reached by the staff but unsupported by any evidence elicited either on cross-examination or by direct evidence produced by the staff. We agree with the Supreme Judicial Court of Massachusetts, which said in *New England Telephone & Telegraph Co. v. Dept. of Public Utilities*, 371 Mass. 67, 80, 354 N.E.2d 860, 869 (1976), that "disallowance of payments in excess of 1% of the Company's gross revenue, based on criticism applicable only to an unspecified portion of the payments, is arbitrary and is unsupported by substantial evidence." We therefore must reverse that portion of the commission's order.

*Errors Nos. 5, 6, and 7—Interest on Working Capital; 1981*

*Income Tax; and Interest on Construction Loans.*

Northwestern Bell's next three assignments of error may be considered together. Northwestern Bell contends that the commission erred in refusing to permit it to include an item of interest on cash working capital requirements, in failing to give it credit for all of its 1981 federal income taxes by imputing to it a theoretical interest deduction, and by disallowing the amortization of one-tenth of the interest on short-term construction projects for the period of January 1, 1979, through April 30, 1980, and in removing from the rate base the unamortized portion of such interest.

While we might examine each of these three matters in the same great detail advanced by the parties, thereby unduly lengthening this opinion and probably providing more information than anyone other than the parties themselves can either digest or understand, the fact of the matter is that with regard to these three areas there was conflicting evidence offered by each side's experts. That is to say, with regard to these three matters, each side presented conflicting evidence and now argues that conclusions arrived at by the commission were erroneous because the contrary evidence should have been accepted. It is in this particular area where the Supreme Court, on review, is severely limited in what it may do.

As we noted in *Nebraska Railroads of Omaha v. Nebco, Inc.*, 194 Neb. 322, 330, 231 N.W.2d 505, 510 (1975):

> It is only where the findings of the Commission are against all the evidence that this court may hold the Commission's findings are arbitrary and [sic] capricious. The test, we believe, is best summarized in In re Lincoln Traction Co., 103 Neb. 229, 171 N.W. 192 (1919), wherein this court stated the rule to be: "This court upon appeal cannot disturb findings of the commission, unless it appears that some requirements of the law have been violated or disregarded, *or that the result reached cannot reasonably be derived from the facts proved.*" (Emphasis supplied.)

See, also, *In re Application of Best*, 209 Neb. 524, 308 N.W.2d 726 (1981).

While the arguments made by Northwestern Bell may be persuasive and, if adopted by the commission, supportable by

evidence in the record, we simply are not authorized by law to second-guess the commission. As we noted in *Robinson v. National Trailer Convoy, Inc.*, 188 Neb. 474, 478, 197 N.W.2d 633, 636 (1972): "Our function [the Supreme Court] in review is only to determine whether it [the commission's order] has a rational basis and is not arbitrary, capricious, or unreasonable." The mere fact that the evidence in this case is in conflict or that either position could be supported by the evidence does not permit us to reverse the action taken by the commission. We therefore find that with regard to assignments of error 5, 6, and 7, the order of the commission must stand.

*Error No. 8—Rate of Return.*

That brings us, then, to the last assignment of error. Northwestern Bell maintains that the commission erred in failing to grant it a fair rate of return on its Nebraska intrastate investment. Northwestern Bell had sought, by its application, a rate of return in the range of 13.2 to 13.8 percent. The commission, in its order, granted a rate of return in the amount of 11 percent.

As is so often the case in attempting to determine an appropriate rate of return, evidence presented by both sides varied widely.

The record reflects that both sides presented extensive evidence in this regard. Nevertheless, the rate determined by the commission was within the range of the evidence presented by the experts, though, admittedly, it was at the low end of the range. As we noted in *Omaha & C. B. Street R. Co. v. Nebraska State Railway Commission*, 103 Neb. 695, 697, 173 N.W. 690, 691 (1919), the commission, in determining a reasonable rate of return, has "a wide discretion." The ascertainment of a fair return in a given case is a matter incapable of exact mathematical determination and is one which must be, to some extent, left to the discretion of the commission. At best, it is one of reasonable approximation given its basis in a proper consideration of all relevant facts. See *Southern Bell Tel. & T. Co. v. Louisiana Pub. Serv. Com'n*, 239 La. 175, 118 So. 2d 372 (1960).

One may agree with Northwestern Bell's argument that the commission should not have refused to consider the high end of

a range because the company "has not exercised certain cost controls which other businesses and governmental bodies have had to observe." Still, one cannot find that the commission's action was arbitrary or capricious. While the commission's statement was perhaps gratuitous and unsupported by the facts, the issue to be determined by the commission was not whether Northwestern Bell had exercised cost controls similar to other businesses, but what the fair rate of return should be. This is not dissimilar to a situation where the trial court reaches the correct result for the wrong reason. In those cases we do not set aside the order, and we are unable to do so in this case. We are simply unable to say that the determination by the Public Service Commission with regard to the rate of return was arbitrary or capricious.

Having examined all of the matters presented to the court, the order of the commission is in part affirmed and in part reversed and remanded with instructions to enter an order in conformance with this opinion.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.

WHITE, J., participating on briefs.