358 N.W.2d 203 (1984)
218 Neb. 637
In re Application of James M. McCARTY.
James M. McCARTY, Appellant,
v.
NEBRASKA PUBLIC SERVICE COMMISSION, Appellee.
In re Complaint of BEE LINE MOTOR FREIGHT and Brown Transfer Co.
BEE LINE MOTOR FREIGHT, INC., and Brown Transfer Co., Appellees,
v.
KRUSE TRANSPORTATION CO., INC., Appellant,
Canning Truck Service et al., Intervenors-Appellees.
No. 83-833.
Supreme Court of Nebraska.
November 9, 1984.
*204 Michael J. Ogborn of Nelson & Harding, Lincoln, for appellants.
Marshall D. Becker, Omaha, for appellees Bee Line Motor Freight and Brown Transfer Co., and for intervenors-appellees.
KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ., and COLWELL, District Judge, Retired.
KRIVOSHA, Chief Justice.
This is an appeal from orders entered by the Nebraska Public Service Commission (Commission) in two cases which were consolidated for hearing before the Commission and which are consolidated for disposition before this court. The first case involves an application by James M. McCarty, filed pursuant to the provisions of Neb. Rev.Stat. § 75-311 (Reissue 1981), seeking approval to transfer stock in Kruse Transportation Co., Inc. (Kruse), from the present owner, Carl Cooper, to McCarty. The second action involves a complaint filed by Bee Line Motor Freight (Bee Line) and Brown Transfer Co. (Brown) against Kruse, alleging that the authority held by Kruse was dormant and therefore should not be transferred absent a showing that the transfer is or will be required by the present and future public convenience and necessity, as required by Neb.Rev.Stat. § 75-318 (Reissue 1981). Canning Truck Service, Lyon Transfer Company, and M & S Transfer were granted leave to intervene and join with Bee Line and Brown in their complaint. Following a public hearing, the Commission denied the application filed by McCarty. McCarty has appealed to this court, maintaining that the Commission erred in numerous ways. We need, however, only determine the issue regarding dormancy, for if we find that the action of the Commission in finding the Kruse authority dormant is supported by the evidence, we are required by law to affirm the action of the Commission. Our review of the record convinces us that there is sufficient evidence to support the order entered by the Commission on the dormancy issue, and, accordingly, we affirm.
Each side vigorously argues that the other has the burden of proof in this case. *205 The issue is somewhat blurred because we have two different types of action consolidated for trial. We may, however, dispose of this issue by simply noting that regardless of who may have the burden of proof in each particular case, the evidence upon which the Commission relied was produced prior to Commission action. Therefore, the question of who should have produced the evidence or who had the burden of proof need not be considered.
The evidence discloses that McCarty produced three witnesses in support of his application for authority to purchase the stock. The witnesses were Paul Schmalenbach, Donald O. Hall, and the appellant James M. McCarty. Both Hall's prepared statement, introduced in evidence, and his oral testimony given at the hearing established that his involvement with the Kruse operation began on or about August 1, 1982, when McCarty took over the Kruse operation without authority from the Commission. Except for an unsupported conclusion contained in Hall's prepared statement, to the effect that he was familiar with the Kruse operation prior to August 1, 1982, and knew it held itself out to the shipping public as a motor common carrier, Hall's testimony provided no evidence upon which the Commission was required to find that the Kruse certificate was active prior to the time that McCarty took over the Kruse operation. Likewise, McCarty's prepared statement contained no evidence which required the Commission to find that the Kruse certificate was active prior to August of 1982. Consequently, only the testimony of Paul Schmalenbach remained to be considered. Schmalenbach's prepared statement recited the fact that prior to August 1, 1982, he "managed" Kruse for the owner, Carl Cooper, and did everything expected of a "general manager." While his prepared statement indicated that he was the general manager of Kruse, Schmalenbach's oral testimony contradicted that fact. Schmalenbach testified at the hearing that he did not manage Kruse, but was merely an "agent" for Kruse. Schmalenbach did not even know what authority Kruse held. In response to a question on cross-examination, he testified: "A I don't know what their authority read. Q How did you know when you were given a load whether or not Kruse Transportation actually had that authority or not? A Well, I'm just an agent. I'm not the manager. I did what the manager says." The record further reflects that Kruse had no manager at any time in Omaha and that Schmalenbach, as "agent," was the only person stationed in Omaha who was connected with Kruse.
While Schmalenbach attempted to establish that Kruse had transported barrels intrastate from time to time prior to August 1982, the evidence was so vague and unsupported by any other corroborative evidence that the Commission apparently chose to disregard it, as it was entitled to do.
McCarty argues that there was ample evidence to support a finding that Kruse was not dormant prior to his purchase. The record would seem to dispute this contention. As an example, on cross-examination McCarty was asked about freight bills brought to the hearing but which were never offered in evidence.
Q Now, your counsel was kind enough to bring along a numer [sic] of freight bills, some of which covered Exhibit Number 5, and I have looked through those with your able assistance. Would I be correct in making the statement that of the freight bills that you brought with you, except for some shipments that date back to 1976, you have no actual freight bills showing transportation by Kruse during the years 1977, 1978, 1979, 1980, 1981, or the first part of 1982?
A Well, there should be records here for 1974 and '75 and '76 and 1977 and 1978. And Mr. Cooper assured me that there was other records to cover the years of 1979 and 1980 and 1981, and since Mr. Cooper had left Chillicothe, Missouri down to Tulsa, I have had a very difficult time to get Mr. Cooper to cooperate with me to furnish me the rest of the papers and everything.

*206 Q Yes, I understand that and I read your statement. I just wanted to make it clear on the record that the records you brought with you, which may have been all you're able to find, we have no freight bills showing actual transportation in intrastate commerce for those periods that I need.
A I have not seen the records for 1980.
Q Now you do have, and your counsel made reference to, annual report that was filed by Kruse for 1980 and for the year 1981. Do you recall that?
A Yes.
Q But, as far as any underlying documents are concerned, you have not brought with you nor have you ever seen any freight bills covering that transportation.
A No, I have not seen no freight bills.
The reference to Cooper in McCarty's testimony pertained to the former owner of Kruse, Carl Cooper, who, according to the statement submitted by McCarty, was a certified public accountant, formerly of Chillicothe, Missouri, who had been transferred to Tulsa, Oklahoma. The record failed to disclose any evidence of anyone, other than Schmalenbach as agent, operating an intrastate transportation operation on behalf of Kruse in the State of Nebraska at any time before McCarty sought to purchase the stock.
Furthermore, witnesses for the various complainants appeared and testified that they were actively engaged in intrastate transportation in the State of Nebraska, were mindful of their competition, and were not aware of any movement by Kruse prior to the time that McCarty sought to acquire the stock.
The only other evidence offered with regard to the movement of intrastate loads was a document produced by McCarty which showed shipments beginning on July 18 and continuing through December 22, 1982. No explanation is given as to why there is suddenly movement by Kruse beginning July 18, 1982, though there was no movement prior to that date, or how such shipments suddenly came into existence when Kruse had no personnel other than Schmalenbach as agent before McCarty purchased the stock. One may surmise that the Commission concluded that the shipments originating on and after July 18, 1982, were the result of efforts by McCarty. Because the shipments were carried without prior Commission approval, they could not be considered in determining whether the certificate of authority had become dormant prior to the transfer of the stock. Jeffries-Eaves, Inc. v. Gettel, Inc., 173 Neb. 337, 113 N.W.2d 476 (1962).
The most that can be said about the evidence produced is that there was a conflict in the evidence, some of which was created by McCarty's own witnesses. The Commission obviously chose to believe the complainants rather than the applicant. We are without authority to order otherwise. In In re Application of ATS Mobile Telephone, 213 Neb. 403, 413, 330 N.W.2d 123, 129 (1983), we said:
"`Whether we agree or disagree with the decision of the commission, however, is immaterial. It is not the province of this court to weigh or resolve conflicts in the evidence, or the credibility of witnesses. The Supreme Court does not act as an appellate public service commission but will sustain the action of the commission if there is evidence in the record to support it ....'" [Citation omitted.]
Further, in Nebraska Railroads of Omaha v. Nebco, Inc., 194 Neb. 322, 330, 231 N.W.2d 505, 510 (1975), we said:
As bearing upon the question of when the findings of the Commission may be held to be "arbitrary and [sic] capricious," it was held in Robinson v. National Trailer Convoy, Inc., 188 Neb. 474, 197 N.W.2d 633 (1972), that if there is evidence to sustain the findings of the Commission, this court may not intervene. It is only where the findings of the Commission are against all the evidence that this court may hold the Commission's findings are arbitrary and [sic] capricious. The test, we believe, is best *207 summarized in In re Lincoln Traction Co., 103 Neb. 229, 171 N.W. 192 (1919), wherein this court stated the rule to be: "This court upon appeal cannot disturb findings of the commission, unless it appears that some requirements of the law have been violated or disregarded, or that the result reached cannot reasonably be derived from the facts proved."
(Emphasis omitted.) See, also, In re Application of Northwestern Bell Tel. Co., 218 Neb. 563, 357 N.W.2d 443 (1984); In re Application of Crusader Coach Lines, 213 Neb. 53, 327 N.W.2d 98 (1982).
When all of the evidence is considered, including the testimony by complainants that they were not aware of Kruse's operations prior to August of 1982, one cannot say that the action of the Commission finding the Kruse authority dormant was arbitrary. McCarty argues that the testimony of the competitors that they were not aware of Kruse's presence does not establish dormancy. However, we have previously held to the contrary. Recognizing that it is extremely difficult to prove the absence of a fact, we said in the case of Ace Gas, Inc. v. Peake, Inc., 184 Neb. 448, 453, 168 N.W.2d 373, 376 (1969): "The evidence of the protestants was that they had not experienced any competition from Wroughton prior to the operations referred to. They believed Wroughton's authority, to the extent that it authorized transportation of bulk commodities and commodities requiring special equipment, was dormant."
We cannot say, as a matter of law, that the Commission was arbitrary in considering the statements of the complainants, together with all of the other evidence before it. Further, we cannot say, as a matter of law, that the evidence would not support a finding by the Commission that the certificate of authority was dormant. Being unable to find that the action of the Commission was arbitrary or capricious, we cannot say that its finding was in error.
The rule is well established that on an appeal to the Supreme Court from an order of the Nebraska Public Service Commission, administrative or legislative in character, the only questions to be determined are whether the Commission acted within the scope of its authority and whether the order complained of is reasonable and not arbitrarily made.
In re Application of Hunt Transportation, 214 Neb. 236, 240, 333 N.W.2d 883, 885 (1983).
Having concluded, therefore, that the Commission did not act arbitrarily in determining that the certificate previously held by Kruse had become dormant prior to the time that McCarty sought to acquire the stock, it was incumbent upon McCarty to show to the Commission that the transfer "is or will be required by the present and future public convenience and necessity." See § 75-318. On this issue the record is abundantly clear that no such showing was made.
No one introduced evidence as to what authority was held by Kruse, let alone how it would be needed in the future. As we observed parenthetically in Neb. Public Service Commission v. Grand Island Mov. & Stor. Co., Inc., 203 Neb. 356, 366, 278 N.W.2d 762, 769 (1979):
Statements of counsel are not evidence. Statements of Commission members are not evidence. Matters of fact known to Commission members are not evidence and are not bases for findings of fact. If matters in the records of the Commission are to be considered by this court on review, they must be included in whatever part of the record, either the bill of exceptions or the transcript, is appropriate under the proper rules.
The record is totally devoid of any evidence that the current needs of the public are not being met or that either present or future public convenience and necessity require the transfer of this dormant certificate. In this regard McCarty failed to meet his burden. For these reasons we believe that the action of the Public Service Commission was not arbitrary or capricious and must be affirmed.
AFFIRMED.