IN RE APPLICATION OF NORTHWESTERN BELL TELEPHONE COMPANY, OMAHA, NEBRASKA.
NORTHWESTERN BELL TELEPHONE COMPANY, OMAHA, NEBRASKA, APPELLEE, V. AMERICAN DATA SYSTEMS, APPELLANT, FIRST CITYCOM CORPORATION ET AL., APPELLEES.

390 N.W.2d 495

Filed July 18, 1986.   No. 85-178.

Thomas H. Dahlk of Fitzgerald & Brown, and, on brief, John W. McClellan, Jr., of McClellan Law Offices, for appellant.

Melvin R. Quinlan and Richard L. Johnson, for appellee Northwestern Bell Telephone Company.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

This action involves an appeal from an order of the Nebraska Public Service Commission setting rates for customer-provided, semipublic telephone service. American Data Systems, a protestant, brought this appeal. We reverse.

In August of 1984 Northwestern Bell Telephone Company made application to the Nebraska Public Service Commission (hereinafter Commission) requesting that its proposed tariffs become effective for semipublic message rate service. First CITYCOM Corporation, a Nebraska corporation, filed a protest, and a hearing was held.

Bell proposed that the rates for customer-owned pay phones be set at $30 per month, plus 12 cents each for the first 200 calls, 10 cents each for the 201st through the 400th calls, 8 cents each

for the 401st through the 600th calls, and 5 cents each for all calls over 600. Where the number of calls could not be metered, a flat rate of $60 was proposed. The Commission ordered that rates be as follows: $30 per month, plus 10 cents each for the first 200 calls, 8 cents for the 201st through the 400th call, and 6 cents each for all calls over 400. The rate for unmetered service was set at $55 per month.

The appellant argues two assignments of error: (1) The Commission had an insufficient factual foundation to reach the conclusion that the rates established were reasonable and not arbitrary and capricious. (2) The Commission erred in failing to address the issue of whether to maintain a monopolistic market or to promote competition. Our decision is based only on the first assignment of error.

The record before the Commission indicates that the rates proposed by Bell are such as to cover the actual costs of providing the service and to maintain the level of revenues currently being generated by coin-operated telephone service in Nebraska. However, the only evidence of this is Bell's assertion of its truthfulness. The applicant provided no facts and figures substantiating its claimed costs and need for maintaining revenue. When Bell's two witnesses were questioned regarding either the profitability of the company's pay phones or the costs associated therewith, they claimed the information as proprietary and refused to divulge it.

In reviewing decisions of the Commission, we have stated:

It is only where the findings of the Commission are against all the evidence that this court may hold the Commission's findings are arbitrary and [sic] capricious. The test, we believe, is best summarized in In re Lincoln Traction Co., 103 Neb. 229, 171 N.W. 192 (1919), wherein this court stated the rule to be: "This court upon appeal cannot disturb findings of the commission, unless it appears that some requirements of the law have been violated or disregarded, *or that the result reached cannot reasonably be derived from the facts proved.*" (Emphasis supplied.)

*In re Application of Northwestern Bell Tel. Co.*, 218 Neb. 563, 570, 357 N.W.2d 443, 449 (1984) (quoting *Nebraska Railroads of Omaha v. Nebco, Inc.*, 194 Neb. 322, 231 N.W.2d 505

(1975)).

"As we have often said, this determination by the Commission is a matter peculiarly within its expertise and involves a breadth of judgment and policy determination that will not be disturbed by this court in the absence of a showing that the action of the Commission was illegal or arbitrary, capricious, and unreasonable. The striking of the balance between the competing interests of legitimate competition and the protection of the public interest are matters of legislative and administrative determination peculiarly resting in the judgment of the Commission. [Citation omitted.] . . . 'The determination of the public interest in such a case is one that is peculiarly for the determination of the commission. If there is evidence to sustain the finding of the commission, this court cannot intervene.' " *Robinson v. National Trailer Convoy, Inc.*, 188 Neb. 474, 475-76, 197 N.W.2d 633, 635 (1972).

*In re Application of ATS Mobile Telephone*, 213 Neb. 403, 411, 330 N.W.2d 123, 128 (1983).

Having reviewed the decision of the Commission in light of the limited evidence presented by the applicant, we find that the result reached *cannot* reasonably be derived from the facts proved. The record is simply insufficient to enable the Commission to reasonably balance the public interest against the applicant's need to maintain revenues.

Bell's reliance on the fact that the Commission "is well acquainted with NWB's business and is particularly knowledgeable about the status of public telephone service in this state" (brief for Appellee at 27-28) and its reliance on the fact that the proposed tariffs were formulated with the help of Commission staff are misplaced.

Matters of fact known to Commission members are not evidence and are not bases for findings of fact. Furthermore, the Commission may not rely on reports and data of its own staff in making such findings without introducing such reports and data in evidence so as to afford interested parties an opportunity to meet them. *Neb. Public Service Commission v. Grand Island Mov. & Stor. Co., Inc.*, 203 Neb. 356, 278 N.W.2d 762 (1979); 2 Am. Jur. 2d *Administrative Law* § 388 (1962). The

record on its face must reflect an adequate basis from which the Commission can base a decision.

Having found the tariff ordered by the Commission to be unsupported by sufficient evidence and therefore unreasonable, arbitrary, and capricious, we reverse that order and remand the cause for further consideration. See, e.g., *Yellow Cab Co. v. Nebraska State Railway Commission*, 176 Neb. 711, 127 N.W.2d 211 (1964).

Because of the possibility of further hearing in this matter, we need address the privilege regarding proprietary information. Bell argues that pursuant to Neb. Rev. Stat. § 27-508 (Reissue 1985), its costs and revenue information are trade secrets which it does not have to disclose. We do not quarrel with the proposition that financial data may fall within the realm of trade secrets. See *Basic Chemicals, Inc. v. Benson*, 251 N.W.2d 220 (Iowa 1977). However, we do not agree that all cost and profit information is properly classified as such. In so holding, we adopt the rationale articulated by the Court of Appeals for the State of Kansas in *Southwestern Bell Tel. Co. v. Kansas Corporation Commission*, 6 Kan. App. 2d 444, 629 P.2d 1174 (1981).

In *Southwestern Bell* the Kansas appellate court was faced with the issue of whether information regarding Bell's and AT&T's marketing and pricing strategy, which had been made available to the Kansas commission, should be made a part of the public record pursuant to a rate increase application. The Kansas court looked to an analysis of Fed. R. Civ. P. 26(c)(7) for guidance.

> "It is well settled that there is no absolute privilege for trade secrets and similar confidential information; the protection afforded is that if the information sought is shown to be relevant and necessary, proper safeguards will attend disclosure. It is for the party resisting discovery to establish, in the first instance, that the information sought is within this provision of the rule and that he might be harmed by its disclosure. . . .
>
> "If it is established that confidential information is being sought, the burden is on the party seeking discovery to establish that the information is sufficiently relevant

and necessary to his case to outweigh the harm disclosure would cause to the person from whom he is seeking the information. The matter was well put by the Advisory Committee on Rules of Evidence: 'The need for accommodation between protecting trade secrets, on the one hand, and eliciting facts required for full and fair presentation of a case, on the other hand, is apparent. Whether disclosure should be required depends upon a weighing of the competing interests involved against the background of the total situation, including consideration of such factors as the dangers of abuse, good faith, adequacy of protective measures, and the availability of other means of proof.' " 8 Wright & Miller, Federal Practice and Procedure: Civil § 2043, pp. 300-302 (1970).

6 Kan. App. 2d at 455-56, 629 P.2d at 1183.

The Kansas court required a weighing of factors in determining whether the information was proper for disclosure.

We hold that, when deciding whether to publicly disclose information which the Commission has found to be relevant and necessary for its proceedings and which a party contends to be in the nature of a trade secret or confidential research, development or commercial information, the Commission should proceed as follows: First, it should determine whether the information is a trade secret or confidential commercial information. In considering this matter, the burden is on the party seeking to prevent disclosure. Secondly, the Commission should weigh the competing interests. In doing so, it should consider, *inter alia*, the financial or competitive harm to the party seeking to prevent disclosure; whether disclosure will aid the Commission in its duties; whether disclosure serves or might harm the public interest; and whether alternatives to full disclosure exist.

*Id.* at 456-57, 629 P.2d at 1184. The court ultimately held that since the commission had found that the information in question had not been used in the rate design which had been proposed, a protective order should have been granted to prohibit the information from being publicly disclosed.

In the case at bar, Bell made no showing that all the information it chose to withhold was in fact proprietary and that it would be harmed by disclosure. Clearly, the Commission cannot reasonably address the issue of establishing rates without cost and profit data. To what extent such information is entitled to protection must be determined under Nebraska law.

> "An exact definition of a trade secret is not possible. Some factors to be considered in determining whether given information is one's trade secret are: (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others."

*Henkle & Joyce Hardware Co. v. Maco, Inc.*, 195 Neb. 565, 571, 239 N.W.2d 772, 776 (1976). See, also, *Southwestern Bell Tel. Co. v. Kansas Corporation Commission, supra.*

The record before us does not contain the specific information sought to be protected, and therefore we make no finding as to its status as a trade secret. Our decision is based on the total absence of any record evidence to sustain the Commission's order.

REVERSED AND REMANDED.