IN RE APPLICATION OF BIJK ENTERPRISES, INC.
BIJK ENTERPRISES, INC., APPELLEE, V. YELLOW CAB CO. ET AL.,
APPELLANTS.
424 N.W.2d 356

Filed June 17, 1988.   No. 86-685.

Marshall D. Becker and Jeffrey W. Meyers, for appellants.

Robert M. Zuber of Zuber & Ginsburg, for appellee.

BOSLAUGH, WHITE, CAPORALE, and GRANT, JJ., and NORTON, D.J.

BOSLAUGH, J.
The protestants, Yellow Cab Co., Checker Cab Co., Happy Cab Co., doing business as Happy Cab, Airport Transportation Co., and Safeway Cabs, Inc., have appealed from the order of the Nebraska Public Service Commission granting the applicant, BIJK Enterprises, Inc., of Omaha, Nebraska, authority to transport passengers and their baggage and articles from retail stores for delivery between points within a 50-mile radius of Omaha over irregular routes under continuing contracts with Borsheim Jewelry, Reagan Buick, Quality Lincoln-Mercury, and the Marriott Hotel.

The record shows that the applicant, BIJK, is a corporation composed of Jerry *B*evins, William *I*senberger, Richard *J*ennings, and Dennis *K*nowlton, whose initials of their last names form the name BIJK. All four are taxicab drivers in Omaha, Nebraska, who lease their cabs from one of the protestants, Happy Cab.

In August 1984, Isenberger became involved in the transportation of customers of Reagan Buick needing transportation to or from Reagan Buick while their automobiles were being serviced. According to Ellis Hoffine, the service director for Reagan Buick and adviser to Quality Lincoln-Mercury, the service provided by Happy Cab taxi service was not cost-effective, and complaints had been made by customers utilizing the service. Among the complaints were the facts that cab drivers took unnecessarily long routes,

customers had to wait for extended periods of time, and there was a poor coordination of service.

After talking with Isenberger about his dissatisfaction with the taxi service, Hoffine asked Isenberger to assume responsibility for the courtesy car service, to which Isenberger agreed. Isenberger proceeded to seek out additional drivers, all of whom now comprise BIJK Enterprises, and to establish and fund a communication/dispatch system in which his wife functioned as dispatcher. Isenberger then arranged a work schedule whereby three vehicles would leave from Reagan Buick with customers for transport at 7:20 a.m., all vehicles heading in different directions, one west, one northeast, and one southeast. Instead of transporting one customer at a time, Isenberger arranged the service so that passengers traveling to the same general vicinity could be delivered together, thus decreasing the cost to the car dealership and minimizing the length of time a customer would have to wait for transportation. After delivering the customers, the cabs returned to Reagan Buick. After about 10:30 a.m., only one driver remained at Reagan Buick for dispatch, and an additional driver served as backup. Identical service was also to be provided for Quality Lincoln-Mercury.

After implementation of this service by Isenberger, Hoffine testified that the service to customers had improved and that he was satisfied with the service. He also stated that if the applicants were denied authority to continue the courtesy car service, both car dealerships would return to their own courtesy car system, as opposed to resuming service by Happy Cab. While operating the courtesy car service for the car dealerships, Isenberger entered into an agreement with Borsheim Jewelry to provide package delivery service for Borsheim.

In addition to these services, Isenberger occasionally transports passengers for the Marriott Hotel to and from Eppley Airport in Omaha. At the time of BIJK's application, the Marriott had a contract with Airport Transportation Co. for the transportation of hotel guests. Gilbert Cohen, the office manager of the Omaha Marriott, who is responsible for the limousine and taxicab services utilized by Marriott, testified as to numerous reasons why Marriott was dissatisfied with the

service provided by Airport Transportation, including the quality of service, the availability or lack thereof of drivers on an on-call basis, communication difficulties with the dispatch office, problems with van drivers being reckless as well as falling asleep at the wheel, written complaints from hotel guests, and mechanical problems with vans, including doors that did not close properly, rattling seats, improperly working seatbelts, and unsanitary vans.

Cohen was interested in obtaining friendly, courteous drivers who offered safe and convenient transportation, and although he had expressed his complaints regarding the van service to Ira Wayne Anderson, vice president of Happy Cab, Yellow Cab, Checker Cab, and Airport Transportation, the problems remained unsolved. Anderson had told Cohen that if he did not like the service provided, he should "drop it." Cohen had previously tried to contract for courtesy car services but found the cost prohibitive. The Marriott is not interested in a taxi service, but wants contract carrier service, finding it a necessity because of cost and distances involved.

Cohen was familiar with Isenberger because of taxi service he had provided to Marriott guests. Cohen contacted Isenberger and spoke with him about performing a prearranged limousine service for Marriott. As a result, a contract was proposed, agreeable to both parties, whereby BIJK would provide the services desired by Marriott.

Based on these tentative contracts, BIJK filed its application to obtain authority to act as a contract carrier to provide courtesy car service for the two car dealerships and a shuttle van service for the Marriott Hotel, as well as a package delivery service for Borsheim Jewelry. At the time of the application, BIJK had leased a 1986 Buick LeSabre 9-passenger station wagon and had made arrangements to lease a 15-passenger van and two additional station wagons. In addition to the equipment, BIJK had acquired $1 million of liability insurance and $10,000 of cargo insurance.

Protests were filed by the appellants, who hold authority to transport passengers and their baggage between various points, alleging that they currently provide all of the services requested to be performed by the applicant. Safeway Cabs joined in the

protest as well as in this appeal, but offered no testimony.

The only witness appearing on behalf of the protestants was Anderson, vice president of the cab companies and Airport Transportation. The cab companies are currently authorized to transport passengers within the city of Omaha. Airport Transportation operates to and from the Omaha airport and delivers packages within Omaha. If the four stockholders of BIJK cease leasing cabs from Happy Cab, it would lose about $1,100 per week.

The commission granted the applicant's request in its entirety.

"In an appeal from an order of the Nebraska Public Service Commission, the Supreme Court examines the record to determine whether the commission acted within the scope of its authority and whether the evidence shows that the order in question was unreasonable or arbitrary." *In re Application of Silvey Refrig. Carr.*, 226 Neb. 668, 676, 414 N.W.2d 248, 254 (1987); *In re Application of Renzenberger, Inc.*, 225 Neb. 30, 402 N.W.2d 294 (1987); *In re Application of Northwestern Bell Tel. Co.*, 223 Neb. 415, 390 N.W.2d 495 (1986).

If there is evidence to sustain the findings and action of the Public Service Commission, the Supreme Court cannot intervene. Where the commission's finding is against all evidence, the Supreme Court may hold that such finding by the commission is arbitrary. *In re Application of Red Carpet Limo. Serv., Inc., supra.* See, also, *In re Application of Greyhound Lines, Inc.*, 209 Neb. 430, 308 N.W.2d 336 (1981). A commission's or agency's action is arbitrary if taken in disregard of facts or circumstances and without some basis which would lead a reasonable and honest person to the same conclusion. *In re Appeal of Levos*, 214 Neb. 507, 335 N.W.2d 262 (1983); *Haeffner v. State*, 220 Neb. 560, 371 N.W.2d 658 (1985).

*Renzenberger, supra* at 35, 402 N.W.2d at 298.

The protestants' five assignments of error are all based on their contention that the applicant failed to meet the statutory requirements. Neb. Rev. Stat. § 75-309 (Reissue 1986) provides in part that

[i]t shall be unlawful for any common or contract

carrier by motor vehicle . . . to engage in any instrastate operations on any public highway in Nebraska unless there is in force with respect to such common carrier a certificate of public convenience and necessity, or a permit to such contract carrier, issued by the commission authorizing such operations.

Neb. Rev. Stat. § 75-311 (Reissue 1986) sets forth the requirements necessary in order to obtain a permit to operate as a contract carrier:

A permit shall be issued to any qualified applicant therefor, authorizing in whole or in part the operations covered by the application, if it appears after notice and hearing from the application or from any hearing held thereon that the applicant is *fit, willing, and able properly to perform the service of a contract carrier* by motor vehicle, and to conform to the provisions of sections 75-301 to 75-322.01 and the lawful requirements, rules and regulations of the commission thereunder, and that the proposed operation, to the extent authorized by the permit, will be *consistent with the public interest by providing services designed to meet the distinct needs of each individual customer* or a specifically designated class of customers as defined in subdivision (10) of section 75-302. Otherwise, such application shall be denied.

(Emphasis supplied.)

The burden is upon an applicant for authority to operate as a contract carrier intrastate to show that the proposed service is specialized and is designed to meet the distinct needs of the contracting shippers; that applicant is fit, willing, and able to perform the service; and that the proposed service will be consistent with the public interest. *Wells Fargo Armored Service Corp. v. Bankers Dispatch Corp.*, 188 Neb. 584, 198 N.W.2d 195 (1972); *Samardick of Grand Island-Hastings, Inc. v. B.D.C. Corp.*, 183 Neb. 229, 159 N.W.2d 310 (1968).

*In re Application of Silvey Refrig. Carr., supra* at 674-75, 414 N.W.2d at 253 (1987).

Specifically, appellants argue that (1) the applicant is not fit, willing, and able to perform the proposed service; (2) there is no

demand for the proposed service; (3) there is no distinct need which could not be met by common carriers; and (4) the proposed operation is not consistent with the public interest.

The protestants concede that no authority is necessary for BIJK to deliver packages for Borsheim Jewelry within the city of Omaha. Thus, the appeal relates only to the proposed transportation services for Reagan Buick, Quality Lincoln-Mercury, and the Marriott Hotel.

The protestants rely solely on the issue of financial fitness in contending that BIJK is not fit to perform. We believe the applicant in this case demonstrated financial fitness. The financial statement submitted with the application evidenced a net worth of $4,000. Additionally, Isenberger testified that arrangements for acquiring all necessary equipment had been made. At the time of the hearing, BIJK was leasing a 1986 Buick 9-passenger station wagon and had made arrangements to lease a van and two additional station wagons. The record also shows that the applicant had obtained both liability and cargo insurance.

In addition to financial fitness, the applicant has shown that it is willing and able to perform the requested services. Isenberger has been in complete charge of the courtesy car service for Reagan Buick and Quality Lincoln-Mercury since November of 1984. He has not only coordinated those services but has carried them out to the satisfaction of the dealership's management. Isenberger has proposed a contract acceptable to Marriott.

Although the appellants assigned as error that the commission erred in finding there was a demand for the types of services offered by the applicant, the error was not discussed. "Errors not properly assigned will not be considered. Both the rules of this court and prior case law require that each error relied upon for reversal be separately and concisely stated and discussed." *State v. Bonczynski*, 227 Neb. 203, 204-05, 416 N.W.2d 508, 510 (1987); Neb. Ct. R. of Prac. 9D(1)d (rev. 1986). Although the statute relating to permits for contract carriers does not require proof of demand, the record shows a demand for the services to be performed by the applicant. For these reasons, this assignment lacks merit.

As to need, the protestants concede that, in regard to the Marriott, "there was <u>some</u> evidence demonstrating a request for Applicant's service, and that the action of the Commission in regard to granting authority to serve this particular company probably does not constitute reversible error." Brief for Appellants at 12. As to Reagan Buick and Quality Lincoln-Mercury, the testimony of Hoffine demonstrated that both car dealerships have distinct needs for a nontaxi courtesy car service. The needs of Reagan Buick and Quality Lincoln-Mercury were distinct and could not be met by a taxi service.

In addition, testimony from Isenberger indicated that one individual was assigned to serve the transportation needs of the dealerships throughout the entire day and that a second individual would be available as backup help if necessary. BIJK very obviously proposes to offer an innovative and customer-tailored service which was not provided by and could likely not be found with a taxi service.

As to the public interest, the courtesy car service proposed by BIJK and requested by Reagan Buick and Quality Lincoln-Mercury is specifically necessary for the car dealerships to gain customer satisfaction and promote public relations. The evidence as to the numerous complaints by customers prior to Isenberger's performance of the courtesy service demonstrates that the public interest was not being properly served. The commission found that "[n]othing in this record would indicate that the grant of this application would be inconsistant [sic] with the public interest."

This court, in addressing the issue of public interest, has stated:

> " 'As we have often said, this determination by the Commission is a matter peculiarly within its expertise and involves a breadth of judgment and policy determination that will not be disturbed by this court in the absence of a showing that the action of the Commission was illegal or arbitrary, capricious, and unreasonable. The striking of the balance between the competing interests of legitimate competition and the protection of the public interest are matters of legislative and administrative determination

peculiarly resting in the judgment of the Commission. [Citation omitted.] . . . "The determination of the public interest in such a case is one that is peculiarly for the determination of the commission. If there is evidence to sustain the finding of the commission, this court cannot intervene." ' *Robinson v. National Trailer Convoy, Inc.*, 188 Neb. 474, 475-76, 197 N.W.2d 633, 635 (1972)." *In re Application of ATS Mobile Telephone*, 213 Neb. 403, 411, 330 N.W.2d 123, 128 (1983).
*In re Application of Northwestern Bell Tel. Co.*, 223 Neb. 415, 418, 390 N.W.2d 495, 498 (1986).

The record supports the finding by the commission that the transportation services proposed are consistent with the needs of the public.

The record shows that the commission acted within the scope of its authority, and its action was not unreasonable or arbitrary. Its order is affirmed.

AFFIRMED.