In re Application of Henry Schmunk, In re Application of James C. Agee, Jr., doing business as Highway Transportation Company. Henry Schmunk et al., Appellants, v. West Nebraska Express, Inc., Appellee.

65 N. W. 2d 386

Filed July 23, 1954. No. 33533.

*W. H. Kirwin* and *Sidner, Lee, Gunderson & Svoboda,* for appellants.

*Russell E. Lovell,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the Nebraska State Railway Commission by Henry Schmunk and James C. Agee, Jr. It involves two orders of the commission: The first, revoking and cancelling the certificate of public convenience and necessity issued to and held by appellant Henry Schmunk, and the second, denying the application of appellant James C. Agee, Jr., doing business as Highway Transportation Company, Fremont, Nebraska, wherein he sought approval by the commission of his acquisition of the operating rights and authority which had been issued to appellant Schmunk in application No. M-5257. We shall herein refer to appellants as Schmunk and Agee when it is convenient to do so.

Appellants contend the commission erred in holding there was a willful violation of the Nebraska Motor Carrier Act by Schmunk. The following principles are applicable in considering this matter:

"The Nebraska State Railway Commission has jurisdiction and authority to suspend, change, or revoke a certificate of convenience and necessity in whole or in part, provided that in so doing it proceeds in conformity with section 75-238, R. R. S. 1943." In re Application of Resler, 154 Neb. 624, 48 N. W. 2d 718.

"Unless an order of the railway commission is shown to be unreasonable or arbitrary, this court is not authorized to interfere with the power of the commission to regulate common carriers." In re Application of Resler, *supra*.

"Where there is competent evidence which, if believed, is sufficient to sustain the finding of the railway commission that a willful failure to comply with any lawful order of the commission or with any lawful term, condition, or limitation of a permit or certificate of convenience and necessity issued by it had occurred, an order based on such finding is not unreasonable or arbitrary." In re Application of Resler, *supra*.

See, also, Union Transfer Co. v. Bee Line Motor Freight, 150 Neb. 280, 34 N. W. 2d 363; In re Application of Neylon, 151 Neb. 587, 38 N. W. 2d 552; Safeway Cabs, Inc. v. Honer, 155 Neb. 418, 52 N. W. 2d 266; Christensen v. Highway Motor Freight, 158 Neb. 601, 64 N. W. 2d 99.

Section 75-238, R. R. S. 1943, provides, insofar as here material, as follows: "Any such permit or certificate may, * * * upon complaint or on the commission's own initiative, after notice and hearing, be suspended, changed or revoked in whole or in part, for willful failure to comply with any of the provisions of sections 75-222 to 75-250, or with any lawful order, rule or regulation of the commission promulgated thereunder, or with any term, condition or limitation of such permit or certificate."

The commission cited Schmunk "* * * to show cause, if any there be, why said certificate of public convenience and necessity, as set forth in Appendix 'A', should not be suspended, changed or revoked for willful failure to comply with the provisions of Sections 75-222 to 75-250, R. S. Nebraska, 1943, as amended, with the lawful orders, rules and regulations of the Commission promulgated thereunder and the terms, conditions and limitations of said certificate, including the specific counts more fully set forth in Appendix 'B' hereto, * * *."

Appendix "B" charged: "Specific Count: 1. Cessation of operations and discontinuance of service contrary to General Order 81, section (9) (a)."

The authority held by Schmunk was as follows:

"SERVICE AUTHORIZED: Commodities generally, except those requiring special equipment, other than dump bodies.

"ROUTE OR TERRITORY AUTHORIZED: Irregular routes from western counties of Nebraska, to and from Grand Island, McCook, and occasionally to and from points in the state of Nebraska at large."

The commission's General Order No. 81, section (9) (a), provides: "(9) Failure of carriers to obtain Commission approval to: (a) Discontinue, either in whole or in part, service authorized under a certificate of permit."

The commission's General Order No. 82, Supplement No. 2, requires that a holder of an irregular route certificate must continuously hold out his certificated service so as to be able to answer calls and demands for this service in a reasonably adequate manner.

The commission, as disclosed by its opinion, findings, and order, found:

"* * * that definitely as of November of 1951 respondent did not own or control any truck equipment licensed with RC plates to perform transportation for hire under his certificate. It is further reflected in the record that respondent has performed no transportation under his certificate since July 1, of 1951.

"Therefore, it is apparently well established that respondent has ceased to hold out and perform service under his certificate from November 1, 1951 to January 4, 1952, the date respondent's certificate was suspended by the Commission."

Based on the record it was of the opinion that: "* * * the record of the instant proceedings sustains the conclusion that there has been a cessation of service and operations by respondent to constitute a willful failure

to comply with the rules and regulations promulgated by the Commission."

It is appellants' thought that as long as an irregular route operator holds himself out and is available for business there can be no willful failure to comply with the provisions of the act. Schmunk admits he did not solicit any business under his certificate but did carry a telephone listing as "Schmunk Truck Line." He testified he was ready, willing, and able to handle any freight and hauled whatever he was asked to haul.

We have said: "The term 'willful failure,' as used in section 75-238, R. S. 1943, is such behavior through acts of commission or omission which justifies a belief that there was an intent entering into and characterizing the failure complained of." Union Transfer Co. v. Bee Line Motor Freight, *supra.* See, also, In re Application of Resler, *supra;* Safeway Cabs, Inc. v. Honer, *supra.*

Schmunk acquired his certificate under authority of the commission dated September 12, 1938. Except for a period from August 31, 1943, to February 1, 1946, not here material, it remained in force and effect until January 4, 1952, when, at his request, it was suspended. In conjunction with his operations under this certificate Schmunk also operated as an itinerant merchant in unregulated commodities for which he had a permit. This apparently seems to be necessary for holders of irregular route certificates in order to successfully operate. In fact, Schmunk's operations under his certificate were only a small part of his trucking operations, being only about 10 percent thereof, the rest beng as an itinerant merchant.

In May 1951, Schmunk started operating a used car lot in Scottsbluff, where he lived, having had a license to do so since 1949. He devoted a good deal of his time to this business. Beginning with 1951 Schmunk seems to have decided to discontinue operations under his certificate. He only purchased one set of RC plates for 1951, being for a 1949 F-8 tractor and a 1950 Trailmo-

bile trailer referred to as a reefer. When he sold the trailer, which he did in November 1951, he was thereafter without a unit which was licensed to operate with RC plates. While he conducted a small amount of business under his authority in the first 6 months of 1951, he conducted none in the last 6 months. He permitted his public liability and property damage insurance to expire on November 24, 1951.

While Schmunk, as already indicated, testified he held himself out and was available for business at all times until January 4, 1952, when he asked for and obtained a suspension of his certificate, we do not think the facts and circumstances support such a finding. We think, at least since July 1, 1951, he ceased operating under the certificate and that the action of the commission was not unreasonable or arbitrary.

Since a certificate of convenience and necessity is in the nature of a permit or license and is not property in the ordinary sense the revocation thereof left nothing to be acquired by Agee. See, Union Transfer Co. v. Bee Line Motor Freight, *supra;* Effenberger v. Marconnit, 135 Neb. 558, 283 N. W. 223. Consequently, whether the approval of Agee's application to acquire Schmunk's authority would result in a new or different service or operation as concerns territorial scope, as the commission decided it would, becomes immaterial.

In this respect section 75-240, R. S. Supp., 1953, provides: "* * * provided further, that if the proposed merger or consolidation of the certificates or permits will permit or result in a new or different service or operation as to territorial scope than that which is or may be rendered or engaged in by the respective parties, * * * the commission may approve such an application for merger or consolidation only upon the basis of proof of and a finding that the proposed merger or consolidation is or will be required by the present and future public convenience and necessity, in the same manner as provided in section 75-230."

However, we shall assume, for the sake of discussion only, that the acts of Schmunk only caused the certificate he held to become dormant and were not sufficient to justify its revocation for willful failure to comply with the provisions of sections 75-222 to 75-250, R. R. S. 1943, or with any lawful order, rule, or regulation of the commission promulgated thereunder.

Section 75-240, R. S. Supp., 1953, provides, in this respect: "* * * Provided, that if any of the certificates or permits proposed to be merged or consolidated are dormant, the commission may approve an application for consolidation or merger only upon proof of and a finding that such merger or consolidation is or will be required by the present and future public convenience and necessity, in the same manner as provided in section 75-230; * * *."

In this respect the commission found: "* * * it is also the opinion of the Commission that the evidence does not indicate that the present or future public convenience and necessity require the service proposed in the instant application."

"The grant or denial of a certificate of convenience and necessity by the Nebraska State Railway Commission requires the exercise of administrative and legislative functions and not of judicial powers." In re Application of Petersen & Petersen, Inc., 153 Neb. 517, 45 N. W. 2d 465. See, also, In re Application of Neylon, *supra*.

"This court said in In re Application of Canada, 154 Neb. 256, 47 N. W. 2d 507: 'A provision of the statute is that as a condition precedent to the issuance of a certificate, the commission shall find that the service to be authorized is or will be required by present or future public convenience and necessity.'" Edgar, v. Wheeler Transport Service, Inc., 157 Neb. 1, 58 N. W. 2d 496.

"The burden is on an applicant for a certificate of convenience and necessity to show that the operation under the certificate is and will be required by the present

or future public convenience and necessity." Christensen v. Highway Motor Freight, *supra*.

"In determining the issue of public convenience and necessity, controlling questions are whether the operation will serve a useful purpose responsive to a public demand or need; whether this purpose can or will be served as well by existing carriers; and whether it can be served by applicant in a specified manner without endangering or impairing the operations of existing carriers contrary to public interest." Christensen v. Highway Motor Freight, *supra*.

"The question of the adequacy of service of existing carriers is implicit in the issue of whether or not convenience and necessity demand the service of an additional carrier in the field. Obviously the existence of an adequate and satisfactory service by motor carriers already in the area is complete negation of a public need and demand for added service by another carrier." In re Application of Canada, 154 Neb. 256, 47 N. W. 2d 507.

In this respect the commission found: "That the present and future public convenience and necessity do not require the service proposed in Application No. M-6617, Supplement No. 3."

It is difficult to discuss this issue from a factual basis for it is apparent Agee, the holder of irregular route authority, offered no evidence to obtain the authority held by Schmunk on this theory. In fact the only evidence introduced in this regard was by the objector, West Nebraska Express, Inc., a corporation, of Scottsbluff, Nebraska, a regular and irregular route operator in intrastate commerce under authority granted it in application No. M-8349, supplement No. 3. That evidence clearly establishes the fact that public convenience and necessity, neither present nor future, require the acquisition of this authority by Agee. In fact, the record shows the service now in the field is fully adequate to satisfactorily supply the public's needs, both present and future.

What has been said here is equally applicable in case

the acquisition, if authorized, would result, as the commission found it would, in a new or different service or operation, as to territorial scope, than that which is or may be rendered or engaged in by the respective parties, for in either event it would require proof of and a finding that the proposed merger or consolidation is or will be required by the present and future public convenience and necessity. The record will support no such finding. In fact, as already stated, it establishes the contrary.

In view of the foregoing, the commission's finding "That the proposed acquisition * * * would not be consistent with the public interest," is correct and fully supports its denial of the application. See § 75-240, R. S. Supp., 1953.

In view of the foregoing, the orders of the commission are affirmed.

AFFIRMED.