IN RE APPLICATION OF CRUSADER COACH LINES, INC.
CRUSADER COACH LINES, INC., APPELLANT, V.
GREYHOUND LINES, INC., APPELLEE.

327 N.W.2d 98

Filed December 10, 1982. No. 81-654.

Marshall D. Becker of Stern & Becker, for appellant.

James E. Ryan of Ryan & Williams, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

HASTINGS, J.

This is an appeal from an order of the Nebraska Public Service Commission denying the application of Crusader Coach Lines, Inc., to operate as a common carrier furnishing charter motorbus service between all points within the State of Nebraska.

Protests were filed by Greyhound Lines, Inc., and Arrow Stage Lines, Inc., both of which hold authority to operate charter bus service to all points

within the State of Nebraska, as well as certain regularly scheduled routes within the state. Because of defective service of protest, Arrow was not permitted to offer evidence in support of its protest, but only to make a statement for the record. Greyhound appeared and offered evidence. Following a hearing, the commission found that the applicant was fit, willing, and able to perform the service proposed. Nevertheless, it further found that the proposed service "is not, or will not be required by the present or future public convenience and necessity," and denied the application. Crusader appeals from that order.

Crusader Coach Lines, Inc., is located in Logan, Iowa, and has been in business strictly as a charter bus company since 1979. It holds temporary authority from the Interstate Commerce Commission for operation between all points within and between the States of Iowa and Nebraska which lie within a radius of 150 miles from Logan, Iowa, and all points within the continental United States, as well as certain permanent charter authority in southwest Iowa as granted by the Iowa Department of Transportation. Crusader currently owns and operates four 41-passenger buses. As previously indicated, there is no question as to Crusader's fitness and ability to perform the requested service.

As to the issue of public convenience and necessity, the applicant called two witnesses other than its president, representatives of Brandeis Travel and Triple A World Travel. Both are travel agencies located in Omaha, Nebraska. The witness from Brandeis testified that it was important to her agency that she be able to call a bus company and get confirmation on the price and availability of a bus right away. Her experience with Greyhound, she said, was that it normally took about 3 days to get this confirmation; whereas her experience with Crusader had led her to believe she could get confirmation the same day. She particularly com-

plained that she had tried to book buses for Nebraska football games in Lincoln for the fall of 1981, but was told by Greyhound, Trailways, and Arrow that no buses were available. However, she conceded that buses are extremely difficult to obtain on Nebraska football Saturdays. This witness also testified that Brandeis had used both Greyhound and Trailways for various intrastate package trips and that their services were satisfactory.

The witness from Triple A World Travel gave similar testimony. Her agency had used Greyhound, Trailways, and Arrow, although she said that in a couple of instances she had not been as satisfied with the equipment and the actual busdriver for Arrow as she had been with the other companies. She also complained about the 3- to 5-day wait for confirmation of buses. She said it was important to get back to a potential customer first, as usually these customers are getting bids from other agencies. A lack of buses for football excursions was also cited by her as a problem, although she too agreed that football Saturdays made extraordinary demands on the bus companies for equipment.

The witness in support of the protest of Greyhound testified that its charter revenue amounted to approximately 8 percent of its total revenue generated within the State of Nebraska. He stated that because certain of Greyhound's regular routes and schedules lose money, it is important to have the charter business to make up this loss. Greyhound already experiences competition from Trailways and Arrow for charter business. He said that his company actively solicits charter bus service business in Nebraska intrastate commerce. He stated that in his opinion, with the exception of football Saturdays, Greyhound and the other carriers in the area could adequately handle the intrastate charter business in Nebraska. He volunteered that, on occasion, Greyhound itself has handled 25 or more charters on a football weekend.

The statement offered in behalf of Arrow disclosed that it had been in business in Nebraska for 51 years and that more than 51 percent of its business income comes from charters. Also, according to the statement of Arrow's president, it generally is losing money on the regular routes, which are therefore being subsidized by the charter business. He conceded that four buses probably would not make all that much difference, particularly with relation to the football charters, but he was concerned about the cumulative effect of this application. Arrow has a fleet of 42 buses, 16 based in the Omaha area, and it has as many as 20 to 25 buses available for charter service in the area.

Upon an appeal from an order of the Public Service Commission, this court may decide only whether the commission acted within the scope of its authority and whether the order was based on evidence which shows that such order was not unreasonable or arbitrary. *In re Application of Greyhound Lines, Inc.,* 209 Neb. 430, 308 N.W.2d 336 (1981).

The burden is on the applicant to show that the proposed service is required by public convenience and necessity. In determining that issue, the controlling questions are whether or not the operation will serve a useful purpose responsive to a public demand or need; whether or not this purpose can or will be served as well by existing carriers; and whether or not it can be served by the applicant in a specified manner without endangering or impairing the operations of existing carriers, contrary to the public interest. *In re Application of Petroleum Transport Service, Inc.,* 210 Neb. 411, 315 N.W.2d 245 (1982).

The applicant complains particularly of the following language contained in the commission's order: "Charter service has traditionally been the province of the bus lines who provide the regularly scheduled service which is the backbone of passenger and express service. If the Commission were to open up

the charter service to everyone who can buy a bus or two and let those operators skim the cream from the passenger service, it would undermine the already precarious positions of the bus companies who have made significant investments not only in fleets of buses, but in terminal facilities, agencies, and other support functions which a strictly charter operator would not have to make.''

The choice of language in a portion of those findings is unfortunate. However, in actuality, it does nothing more than to conclude that by granting the authority it would endanger or impair the operations of existing carriers, contrary to the public interest. The cited case authority justifies such considerations, as does Neb. Rev. Stat. § 75-301 (Reissue 1981): ''It is hereby declared to be the policy of the Legislature to (1) regulate transportation by motor carriers in intrastate commerce upon the public highways of Nebraska in such manner as to recognize and preserve the inherent advantages of, and *foster sound economic conditions in, such transportation and among such carriers, in the public interest* . . . .'' (Emphasis supplied.)

The applicant who was denied authority in the case of *In re Application of Schroetlin,* 210 Neb. 508, 315 N.W.2d 630 (1982), also complained that the commission accepted evidence of possible economic harm to other carriers as being sufficient ground upon which to deny a certificate without any evidence of harm to the public interest. However, we answered that charge with the following language: ''Whether we agree or disagree with the decision of the commission, however, is immaterial. It is not the province of this court to weigh or resolve conflicts in the evidence, or the credibility of witnesses. The Supreme Court does not act as an appellate public service commission but will sustain the action of the commission if there is evidence in the record to support it.

''The issue of public convenience and necessity is

ordinarily one of fact and where there is evidence in the record to sustain the Public Service Commission's order, this court cannot say that it is unreasonable and arbitrary. The determination of what is consistent with the public interest, or public convenience and necessity, is one that is peculiarly for the determination of the Public Service Commission." *Id.* at 512, 315 N.W.2d at 633.

The findings of the commission are supported by the record, and its order denying the application must be affirmed.

AFFIRMED.