IN RE APPLICATION OF AMSBERRY, INC., VALENTINE, NEBRASKA. AMSBERRY, INC., APPELLANT, V. WHEELER TRANSPORT SERVICE, INC., ET AL., APPELLEES, JOHNSTON'S FUEL LINERS, INC., ET AL., INTERVENORS-APPELLEES.

370 N.W.2d 109

Filed July 5, 1985.   No. 84-374.

Jack L. Shultz of Nelson & Harding, for appellant.

James E. Ryan of Ryan & Williams, P.C., for appellees.

BOSLAUGH, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired, and COLWELL, D.J., Retired.

PER CURIAM.

Amsberry, Inc. (Amsberry), applied for a certificate of public convenience and necessity for intrastate transportation of petroleum products in bulk between points in Lincoln County, Nebraska, and six other counties—Cherry, Grant, Hooker, Thomas, McPherson, and Logan. From denial of a commission certificate, Amsberry appeals.

Protestants and intervenors concerning Amsberry's application are holders of commission certificates to operate in the area sought to be served by Amsberry, and include Wheeler Transport Service, Inc. (Wheeler); Wynne Transport Service, Inc. (Wynne); Central Transportation Company (Central); Herman Bros., Inc.; Hall H. Edwards; Canada Transport, Inc. (Canada); and Johnston's Fuel Liners, Inc. (JFL).

Milton Amsberry, president of Amsberry, Inc., started in the trucking business in 1973 as a driver for JFL, operating out of Chadron, Nebraska. In 1974 JFL transferred Amsberry to Valentine, Nebraska. While living in Valentine as a JFL driver in 1980, Amsberry formed a business corporation for trucking which purchased motor carrier equipment (a tractor and two trailers) and leased that equipment to JFL on a yearly basis. The Amsberry-JFL lease specified rental paid to Amsberry at 85 percent of gross revenue realized from each shipment of petroleum products transported intrastate under JFL's commission certificate. JFL retained the remainder of gross revenue generated under the lease, approximately $2,500 per month, to pay its expenses. The lease arrangement between a certificate holder and an owner-operator is common practice in the trucking industry. Pursuant to the Amsberry-JFL lease, Amsberry controlled operations originating from Valentine, controlled dispatch, and was responsible for customer contact regarding shipping instructions.

On February 15, 1983, Amsberry filed an application with the Public Service Commission (PSC) requesting issuance of a certificate of public convenience and necessity. On August 9, 1983, the commission denied Amsberry's application but, on Amsberry's motion for rehearing, granted Amsberry's application on October 25. The protestants and intervenors filed a motion for rehearing concerning the PSC order granting authority to Amsberry.

When the PSC granted Amsberry's application in October 1983, the PSC order included a provision that Amsberry could not conduct operations until a commission certificate of public convenience and necessity was issued to Amsberry. Amsberry purchased PSC license plates, filed proof of insurance with the commission, purchased a tariff book, and painted the

corporation's name on its truck. PSC personnel told Amsberry to "get on the ball," because the commission expected Amsberry to use the authority granted. Without a commission certificate Amsberry hauled the first load of bulk petroleum products. Between November 11, 1983, and February 14, 1984, Amsberry hauled 95 loads of petroleum products into the area of proposed service and received revenue of $30,100.50 for such transportation.

At the PSC rehearing on February 23, 1984, requested by protestants and intervenors, Amsberry presented five witnesses in support of its application. All Amsberry witnesses were distributors engaged in the sale of petroleum products; four in Valentine (Cherry County) and one in Thedford (Thomas County). Shipment of petroleum products into the six-county area sought to be served by Amsberry originated in North Platte, Nebraska. With the exception of the witness from Thedford, all witnesses testifying on behalf of Amsberry had been served by JFL as a result of the owner-operator lease between JFL and Amsberry. The Thedford witness had been served by Wynne. Distributors from Valentine testified that they had received Amsberry's personal attention in delivering petroleum products and believed it to be a desirable situation that transportation revenue received by a local motor carrier would remain in the community. Witnesses also testified that a local transporter was beneficial to a distributor for deliveries on short notice to take advantage of price fluctuations. During the 3 months of operation without a commission certificate, Amsberry hauled shipments to witnesses testifying in support of the application. Two distributors indicated they would not tender business to JFL if Amsberry's application were denied. No witness for Amsberry testified about any material problem or dissatisfaction with the service rendered by any protestant or intervenor. Forty to fifty percent of JFL's operations in Nebraska are conducted under owner-operator leases. JFL has no terminal facilities, employees, or resident sales representatives in Nebraska.

Representatives of the protestants or intervenors testified in opposition to Amsberry's application.

The manager of operations for JFL testified that his

company had equipment located in Valentine, Sidney, and North Platte, and generally competed with Wynne and Wheeler within the area of proposed service by Amsberry. Owner-operator leases are widely used by common carriers to reduce expenditures for new or additional equipment; for example, propane tank trailers during winter demands. From January 1 to November 30, 1983, JFL's gross revenue from Nebraska intrastate business was $495,300.81, of which Amsberry produced 16.77 percent, or $83,059.88. Such revenue would be lost to JFL, if a certificate were granted to Amsberry, because the customers previously served by JFL or any other protestant or intervenor would continue business with Amsberry.

A representative of Wheeler testified that the present amount of business in the area sought to be served by Amsberry did not demand Wheeler's capacity in personnel or equipment and that Wheeler would have been able to transport the shipments hauled by Amsberry from November 1983 to February 1984.

The general manager for Wynne testified that his company had transportation units available in North Platte, Sidney, Cozad, and Gothenburg and acknowledged his company's deliveries to the distributor at Thedford. Wynne was able to handle any additional business in the area, if tendered.

Central's general manager testified about his company's equipment located in North Platte and shipments delivered to some of the witnesses testifying for Amsberry. Central expressed concern about future losses due to Amsberry's activities, if continued.

On April 10, 1984, and based upon the evidence produced at the rehearing, the PSC found Amsberry to be "fit, willing and able to conform to the statutes and rules of the Commission," but also found the intrastate service proposed by Amsberry "is not nor will be required by the present or future public convenience and necessity." Among specific findings reflected in its order, the PSC stated:

> The evidence fails to demonstrate that a need exists for additional service. . . . None of the shippers gave any evidence that the service of the protestants and intervenors was in any way unsatisfactory, or that such service could

not meet their respective needs. Most of the witnesses candidly indicated that one of the major reasons for their support was the fact they wanted to help the Valentine economy, and wanted the money derived from Amsberry's operation to remain in the Valentine area.

As assignments of error, Amsberry complains that the PSC (1) incorrectly found no present or future public convenience and necessity for issuance of a commission certificate to Amsberry and (2) disregarded Amsberry's past operations conducted from November 1983 to February 1984 under "color of right" in determining whether there was a public convenience and necessity for issuance of a commission certificate.

In reviewing the record of proceedings in terms of evidence before the PSC, the Supreme Court examines the record to determine whether there is evidence to sustain the commission's findings and action. *In re Application of Greyhound Lines, Inc.*, 209 Neb. 430, 308 N.W.2d 336 (1981); *In re Application of Crusader Coach Lines*, 213 Neb. 53, 327 N.W.2d 98 (1982).

The burden is on the applicant for a certificate of public convenience and necessity to show that the proposed service is required by public convenience and necessity. *Parsons v. Nebraska State Railway Commission*, 181 Neb. 185, 147 N.W.2d 521 (1966); *In re Application of Crusader Coach Lines, supra.*

Whether there is public convenience and necessity for issuance of a commission certificate depends on answers to three questions:

> "[W]hether the operation will serve a useful purpose responsive to a public demand or need; whether this purpose can or will be served as well by existing carriers; and whether it can be served by [the] applicant in a specified manner without endangering or impairing the operations of existing carriers contrary to public interest."

*Black Hills Stage Lines, Inc. v. Greyhound Corp.*, 174 Neb. 425, 429, 118 N.W.2d 498, 500 (1962).

> The question of the adequacy of service of existing carriers is implicit in the issue of whether or not convenience and necessity demand the service of an additional carrier in the field. Obviously the existence of an adequate and

satisfactory service by motor carriers already in the area is complete negation of a public need and demand for added service by another carrier.

*In re Application of Canada*, 154 Neb. 256, 261, 47 N.W.2d 507, 510 (1951); *Schmunk v. West Nebraska Express*, 159 Neb. 134, 65 N.W.2d 386 (1954).

Although witnesses called by Amsberry testified about a general desire to have a local motor carrier based in Valentine, there was no evidence that the present service by the protestants is inadequate. Existence of adequate and satisfactory service, as by the protestants in this case, negates any public need for the additional, proposed service. See *In re Application of Canada, supra*. Further, Amsberry's transportation activities diverted revenue from JFL, an existing carrier holding a commission certificate and conducting operations in the area as a result of the owner-operator lease between Amsberry and JFL. Even if JFL were not involved in transportation of bulk products within the area sought to be served by Amsberry, there was evidence before the commission that other motor carriers, holding commission certificates to conduct operations within the area, had ability to meet the needs and demands of distributors in the area sought by Amsberry.

Whether we agree or disagree with the decision of the commission, however, is immaterial. It is not the province of this court to weigh or resolve conflicts in the evidence, or the credibility of witnesses. The Supreme Court does not act as an appellate public service commission but will sustain the action of the commission if there is evidence in the record to support it.

The issue of public convenience and necessity is ordinarily one of fact and where there is evidence in the record to sustain the Public Service Commission's order, this court cannot say that it is unreasonable and arbitrary. The determination of what is consistent with the public interest, or public convenience and necessity, is one that is peculiarly for the determination of the Public Service Commission.

*In re Application of Schroetlin*, 210 Neb. 508, 512, 315 N.W.2d 630, 633 (1982).

Amsberry contends its activities from November 1983 to February 1984 should have been considered by the commission as evidence of public convenience and necessity. In *Preisendorf Transp., Inc. v. Herman Bros., Inc.*, 169 Neb. 693, 100 N.W.2d 865 (1960), this court recognized an applicant's operating under "color of authority" as evidence of public convenience and necessity. See, also, *Andrews Van Lines, Inc. v. Nielsen & Petersen, Inc.*, 180 Neb. 764, 145 N.W.2d 584 (1966); *Neylon v. Petersen & Petersen, Inc.*, 183 Neb. 813, 164 N.W.2d 452 (1969); *Canada v. Peake, Inc.*, 184 Neb. 52, 165 N.W.2d 587 (1969). However, the common element in those cases was an applicant's operations for an appreciable time; for example, 10 years (*Preisendorf*), 10 years (*Neylon*), 28 years (*Andrews*), and over 30 years (*Canada*). An apparent evidentiary rationale for "color of authority" is public reliance on an applicant's service and expectation of continued service. We suggest no "bright line" regarding the duration of operation under "color of authority." However, under the circumstances presented in this case, the 3 months of transportation activity by Amsberry is insufficient to apply "color of authority" as evidence of public convenience and necessity.

We conclude that the evidence presented to the commission sustains the findings and action of the Public Service Commission. The order of the commission is not arbitrary or capricious and is affirmed.

AFFIRMED.