IN RE APPLICATION OF RENZENBERGER, INC.
RENZENBERGER, INC., APPELLEE, V. BROWN'S CREW CAR OF
WYOMING, INC., DOING BUSINESS AS ARMADILLO EXPRESS,
APPELLANT, SEBASTIAN LOMBARDO, DOING BUSINESS AS FALLS
CITY CAB, APPELLEE.

402 N.W.2d 294

Filed March 20, 1987.    No. 85-749.

Bradford E. Kistler of Nelson & Harding, for appellant.

Lavern R. Holdeman of Peterson Nelson Johanns Morris &
Holdeman, for appellee Renzenberger, Inc.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Brown's Crew Car of Wyoming, Inc. (Brown), doing business as Armadillo Express, protested issuance of a Nebraska Public Service Commission certificate of public convenience and necessity to Renzenberger, Inc., for authority to transport train crews within Nebraska. See Neb. Rev. Stat. § 75-311 (Reissue 1986) (issuance of a certificate of public convenience and necessity). Brown appeals the commission's granting the requested authority to Renzenberger.

Renzenberger, a Kansas corporation transporting train crews, operates interstate under federal authority and intrastate under authority from Kansas and Missouri. Pursuant to a contract with Missouri Pacific Railroad Company, as its sole customer, Renzenberger transports train crews within Kansas and Missouri and sometimes provides interstate service from points in Kansas to Falls City, Richardson County, Nebraska, a terminal for Missouri Pacific.

When it applied for Nebraska authority, Renzenberger had 12 drivers and 12 1-ton vans to transport train crews with their luggage, and offered such service around the clock, 7 days a week. Renzenberger asserts that Nebraska authority is necessary because it is unable to provide complete service for its customer, Missouri Pacific.

Since 1978 Brown has held Nebraska authority to transport train crews between all points in Nebraska, subject to a restriction preventing transportation between Omaha and Fremont involving train crews of Union Pacific Railroad Company. Another carrier provides transportation for the Union Pacific between Omaha and Fremont. Brown also holds federal authority for interstate operation and intrastate authority from Iowa and Wyoming.

Brown has contracts with the Union Pacific and Burlington Northern railroads for transportation of those railroads' train crews within Nebraska. Additionally, on a "call-on-demand" basis, Brown serves the Chicago and North Western railroad and "KATY" railroad in their Nebraska operations. Brown has

sought crew-transportation business from Missouri Pacific and would provide such service, if requested, but Missouri Pacific has declined Brown's service. Brown has 20 employees and operates 14 vehicles stationed in four Nebraska cities—Lincoln in eastern Nebraska, Grand Island and Ravenna in the central part of the state, and Gering in western Nebraska. Brown's service is supplied around the clock, 7 days a week.

At the commission hearing, Brown's president, Joe C. Brown, Jr., testified that the company's business had decreased drastically throughout the year preceding Renzenberger's application. Brown's Nebraska operations were at a subcapacity level, although capacity was reached in 1985 when a heavy rain washed out a part of Burlington Northern's tracks in Nebraska. If Renzenberger's application were granted, Brown testified, his company would suffer loss of revenue. Brown has never received a complaint from Burlington Northern regarding Brown's service and can provide additional equipment, if needed, to meet increased demands for its services.

Another protestant was Sebastian Lombardo, doing business as Falls City Cab, who held Nebraska authority to transport passengers from Richardson County (Falls City) to points within Nebraska and to supply transportation for crews of Missouri Pacific and Burlington Northern within the cab company's authorized area. (The cab company does not appeal issuance of the certificate to Renzenberger because Renzenberger's authority, as hereinafter reflected, excluded operation in Richardson County.)

In support of its application, Renzenberger called a witness, William E. Thompson, Burlington Northern's trainmaster responsible for that railroad's operation in the eastern half of Nebraska. Thompson had no knowledge about Burlington Northern's transportation needs in western Nebraska. However, Thompson testified that Burlington Northern has a daily need for transportation of its train crews and uses Brown to fulfill that need. Thompson also testified that Burlington Northern was satisfied with, and would continue to use, Brown's service. Further, Thompson testified that a solitary carrier could meet Burlington Northern's needs if such carrier

were large enough. According to Thompson, in its eastern district of Nebraska, Burlington Northern has received satisfactory service from two carriers, one of which is Falls City Cab.

When asked the reason for Burlington Northern's support of Renzenberger's application, Thompson explained:

A Well, basically, we just — we'd like to have a backup company in case the need should arise.

Q Okay. Have you — has there been a need shown in the past for a backup company?

A I couldn't specifically state any time. Generally I think what we're looking at is in case of a natural catastrophe, such as a flood or maybe a major derailment
. . . .

. . . .

Q But using them as a backup presently, then, there's no particular need for their service at the present time other than just a backup.

A As I understand it, yes.

Referring to Burlington Northern's transportation needs, Thompson further testified: "[W]e've been satisfied with the service of [Brown and Falls City Cab]. We just basically would like to have a backup service available in the state of Nebraska."

James A. Anthony, district manager in charge of contract matters for Missouri Pacific's central district, which includes Nebraska, testified in support of Renzenberger's application. Missouri Pacific operates a main line out of Omaha, through Falls City, and into Kansas, but is considering abandonment of its branch line to Hastings, Nebraska. Missouri Pacific's "home terminal" for its Nebraska main line is Falls City, headquarters for crews working along that line. Although Renzenberger's service includes interstate transportation of Missouri Pacific's crews from Falls City to Kansas City, Missouri Pacific has contracted with Falls City Cab for intrastate transportation of train crews within Nebraska and will continue to use the cab company for such service. Regarding Omaha and Lincoln, other sources of transportation are available to move Missouri Pacific's train crews to their dispatch points. Anthony testified that Missouri Pacific's train crews, on an average, require

transportation once a day, generally from Falls City to Omaha. When asked whether Missouri Pacific's transportation needs were going to increase in the future, Anthony responded: "Let me just say that I'm not aware of any changes in the immediate future — very immediate future, I'm not aware of any changes." As expressed by Anthony, Missouri Pacific believed Renzenberger would provide more efficient service if Renzenberger held Nebraska authority in addition to interstate authority, and competitive bidding for transportation of train crews was desirable.

The Public Service Commission concluded:

> The applicant's [Renzenberger's] evidence of the demand for the proposed services was not overwhelming. At best the applicant's witnesses tend to look upon the proposed service as a back-up service to the services being provided by the protestants. The protestant Brown did not adduce persuasive evidence that the authorization of the applicant to perform the proposed service would seriously impair the operations of Brown; however, the testimony of the Falls City Cab Company was convincing that further erosion of the economic base of its operations would imperil the existing taxi service in Falls City. It is apparent that the service authorized should be restricted to deny the applicant authority to serve Richardson County and any authority to serve points in Nebraska with trips that originate or terminate in Richardson County.

The Public Service Commission then determined that Renzenberger was fit, willing, and able to perform the service of a common carrier and Renzenberger's "proposed intrastate service is or will be required by the present or future public convenience and necessity . . . ." When the Public Service Commission issued a certificate to Renzenberger, Brown appealed, assigning that the commission erred in failing to find that adequate and satisfactory service by motor carriers, already in the area to be served, was complete negation of public need and demand for Renzenberger's added service; in finding that the certificate of authority granted to Renzenberger is or will be required by the present or future public convenience and necessity; and in deciding that Brown

did not adduce persuasive evidence that authorization for Renzenberger would seriously impair Brown's operations.

In an appeal from an order of the Public Service Commission, the Supreme Court examines the record to determine whether the commission acted within the scope of its authority and whether evidence shows that the order in question was unreasonable or arbitrary. *In re Application of Red Carpet Limo. Serv., Inc.*, 221 Neb. 340, 377 N.W.2d 91 (1985); *In re Application of Amsberry, Inc.*, 220 Neb. 353, 370 N.W.2d 109 (1985); *In re Application of Crusader Coach Lines*, 213 Neb. 53, 327 N.W.2d 98 (1982). If there is evidence to sustain the findings and action of the Public Service Commission, the Supreme Court cannot intervene. Where the commission's finding is against all evidence, the Supreme Court may hold that such finding by the commission is arbitrary. *In re Application of Red Carpet Limo. Serv., Inc., supra.* See, also, *In re Application of Greyhound Lines, Inc.*, 209 Neb. 430, 308 N.W.2d 336 (1981). A commission's or agency's action is arbitrary if taken in disregard of facts or circumstances and without some basis which would lead a reasonable and honest person to the same conclusion. *In re Appeal of Levos*, 214 Neb. 507, 335 N.W.2d 262 (1983); *Haeffner v. State*, 220 Neb. 560, 371 N.W.2d 658 (1985). An applicant for a certificate issuable pursuant to § 75-311 has the burden to prove that the proposed service is or will be required by the present or future public convenience and necessity. *In re Application of Red Carpet Limo. Serv., Inc., supra; In re Application of Amsberry, Inc., supra.*

Whether there is public convenience and necessity for issuance of a commission certificate depends on answers to three questions: " '[W]hether the operation will serve a useful purpose responsive to a public demand or need; whether this purpose can or will be served as well by existing carriers; and whether it can be served by [the] applicant in a specified manner without endangering or impairing the operations of existing carriers contrary to public interest.' " *Black Hills Stage Lines, Inc. v. Greyhound Corp.*, 174 Neb. 425, 429, 118 N.W.2d 498, 500 (1962). "The question of the adequacy of service of

existing carriers is implicit in the issue of whether or not convenience and necessity demand the service of an additional carrier in the field. Obviously the existence of an adequate and satisfactory service by motor carriers already in the area is complete negation of a public need and demand for added service by another carrier." *In re Application of Canada*, 154 Neb. 256, 261, 47 N.W.2d 507, 510 (1951); *Schmunk v. West Nebraska Express*, 159 Neb. 134, 65 N.W.2d 386 (1954).

*In re Application of Amsberry, Inc., supra* at 357-58, 370 N.W.2d at 112.

In deciding that Renzenberger's proposed service responded to a public demand or need, the Public Service Commission stated: "The applicant's evidence of the demand for the proposed service was not overwhelming." Renzenberger's evidence about demand or need for service was not overwhelming, because such evidence was nonexistent. Existing service by Brown and Falls City Cab was adequate and satisfactory and, therefore, operated as a complete negation of a public need and demand for the added service of another carrier. See *In re Application of Amsberry, Inc., supra.* Burlington Northern acknowledged its satisfaction with the service of Brown as well as satisfactory service by Falls City Cab and the railroad's intention to continue use of those motor carriers. If a sole carrier were large enough, such carrier would fulfill the needs of Burlington Northern. It was uncontradicted that Brown has the capacity to meet all present needs of any railroad in Nebraska and could supply additional equipment, if needed. Missouri Pacific had daily need of transportation, generally from Falls City to Omaha, but finds Falls City Cab sufficient for that purpose. Renzenberger does not quarrel with the commission's order specifically precluding Renzenberger's transportation of train crews regarding Richardson County, where Falls City is located.

Public demand or need, which an applicant must prove to obtain a certificate from the Public Service Commission pursuant to § 75-311, is a present actual need or a need which will likely occur within the reasonably immediate or foreseeable future. A certificate of public convenience and necessity cannot

be granted on the basis of future needs which are speculative or improbable. See, *Highway Express Lines, Inc. v. Pa. P. U. C.*, 195 Pa. Super. 92, 169 A.2d 798 (1961); *Kentucky Utilities Company v. Public Service Com'n*, 390 S.W.2d 168 (Ky. 1965); *State ex rel. Eldon Miller, Inc. v. Public Serv. Com'n*, 471 S.W.2d 483 (Mo. App. 1971). Any rule otherwise would bind the present with certificated service based on speculation and mere possibility of demand or need, a foundation not of fact but fantasy. In reference to a certificate based on future need, possibility is not equivalent to probability. Ordinarily, the more prospectively remote a proposed service is in relation to the application for authority, the less likely and more doubtful is need or demand for the service to be authorized. In the case before us, events effected by the elements of nature at indefinite and infrequent intervals and a random derailment are insufficient predicates for probability concerning a certificate issuable in response to public convenience and necessity, present or future. As the Public Service Commission observed: "At best [Renzenberger's] witnesses tend to look upon the proposed service as a back-up," which certainly indicates that the subject service is, in fact, being adequately supplied to rail carriers in Nebraska. There was no demonstrated need for a "back-up" service based on actual experience. Burlington Northern's factually unsupported desire does not rise to the level of a need, actual or probable. Also, at least three motor carriers satisfactorily supply transportation of train crews within Nebraska. Nothing indicates that Brown, as one of those motor carriers, cannot meet the needs of railroads in Nebraska.

Renzenberger has failed to show that existing authorized carriers are unable to supply the proposed service and has also failed to demonstrate any demand or need which requires issuance of a certificate to Renzenberger for public convenience and necessity, present or future. Consequently, the Public Service Commission acted arbitrarily in issuing Renzenberger a certificate of public convenience and necessity. Under the circumstances, there is no necessity to address any question about impairment of Brown's operations as a consequence of a certificate issued to Renzenberger. We, therefore, reverse and

set aside the Public Service Commission's order issuing such certificate to Renzenberger.

REVERSED.