IN RE APPLICATION OF KOCH SERVICE, INC.
KOCH SERVICE, INC., OF WICHITA, KANSAS, APPELLANT, V.
WHEELER TRANSPORT SERVICE, INC., ET AL., APPELLEES.

423 N.W.2d 767

Filed May 27, 1988.   No. 86-684.

Lavern R. Holdeman of Peterson Nelson Johanns Morris & Holdeman, for appellant.

James E. Ryan, P.C., and Jack L. Shultz of Nelson & Harding, for appellees.

HASTINGS, C.J., CAPORALE, GRANT, and FAHRNBRUCH, JJ., and CHEUVRONT, D.J.

FAHRNBRUCH, J.

Koch Service, Inc. (KSI), appeals the Nebraska Public Service Commission's denial of KSI's request for a permit to operate as a contract carrier to haul asphalt and related products for its sister corporation. We affirm.

As originally filed, KSI's application was for a common carrier permit. At the hearing, KSI orally requested only a contract carrier permit, and the hearing proceeded upon that basis.

KSI alleges six separate assignments of error. They may be summarized as follows: (1) that the denial of the application was arbitrary, unreasonable, and unsupported by the evidence; and (2) that the commission's finding that the granting of a permit is not consistent with the public interest was based upon improper criteria, contrary to law.

Although denying the permit, the commission found that KSI was fit, willing, and able to properly perform the services proposed and to conform with the statutes and rules of the commission. The denial was based upon a finding that a grant of the application is not consistent with the public interest as provided in Neb. Rev. Stat. § 75-311 (Reissue 1986).

KSI seeks to transport asphalt, asphalt cements, cutback asphalt, and emulsified asphalt for Koch Asphalt Company (KAC). Both KSI and KAC are owned by Koch Industries, Inc.

In reviewing the record before the Public Service Commission, the Supreme Court examines the record to determine whether the commission acted within the scope of its authority and whether the evidence shows that the order in question was unreasonable or arbitrary. *In re Application of Silvey Refrig. Carr.*, 226 Neb. 668, 414 N.W.2d 248 (1987); *In re Application of Amsberry, Inc.*, 220 Neb. 353, 370 N.W.2d 109 (1985).

" ' " 'Whether we agree or disagree with the decision of the commission . . . is immaterial. It is not the province of

this court to weigh or resolve conflicts in the evidence, or the credibility of witnesses. The Supreme Court does not act as an appellate public service commission but will sustain the action of the commission if there is evidence in the record to support it. . . .' " ' "

*In re Application of Silvey Refrig. Carr., supra* at 676, 414 N.W.2d at 254; *In re Application of McCarty*, 218 Neb. 637, 358 N.W.2d 203 (1984).

Section 75-311 provides in part that a permit shall be issued to a qualified applicant if (1) the applicant is fit, willing, and able to properly perform the service of a contract carrier and to conform to statutory and lawful requirements, rules, and regulations of the commission and (2) the proposed operation will be consistent with the public interest by providing the services designed to meet the distinct needs of each customer or class of customers.

If KSI's contract carrier permit was granted, it would only involve one shipper, KAC. Therefore, only that shipper's requirements need to be considered here.

The controlling issue raised before this court is whether the commission acted unreasonably or arbitrarily in denying KSI's application on the basis that to grant it would be inconsistent with the public interest.

Under *Wells Fargo Armored Service Corp. v. Bankers Dispatch Corp.*, 188 Neb. 584, 198 N.W.2d 195 (1972), to obtain a permit, KSI must show that its proposed service is specialized and fits the needs of a proposed contracting shipper or shippers; that the applicant is fit, willing, and able to perform the service; and that the proposed operation will be consistent with the public interest. See, also, *In re Application of Silvey Refrig. Carr., supra*; *Samardick of Grand Island-Hastings, Inc. v. B.D.C. Corp.*, 183 Neb. 229, 159 N.W.2d 310 (1968).

However, "[w]here the transportation of specified commodities can be performed as well by common carriers as by contract carriers, a need for contract carriers is not established." *Wells Fargo Armored Service Corp. v. Bankers Dispatch Corp., supra* at 587, 198 N.W.2d at 198; *Samardick of Grand Island-Hastings, Inc. v. B.D.C. Corp., supra.*

Therefore, the commission is required to weigh the special needs of the shipper desiring contract carrier service against the adequacy of existing common carrier service. *Wells Fargo, supra.*

The effect on protesting carriers of a grant of the application and the effect on shippers of a denial are also factors to be weighed in determining if the grant of the application would be consistent with the public interest. *Wells Fargo, supra; Hagen Truck Lines, Inc. v. Ross,* 174 Neb. 646, 119 N.W.2d 76 (1963).

In the present case, KSI proposes to meet KAC's special needs. They are: (1) transportation of asphalt and related products in insulated trailers, (2) immediate availability of trucking equipment, (3) tight peak-season truck schedules because of KAC's limited dock space, (4) peak-season storage of inventory in trailers, (5) jobsite delivery and report of any delivery problems on the site, (6) return of partial excess loads, (7) drivers who maintain business confidentiality, (8) inclusion of two-way radios, (9) special training and safety program for drivers, and (10) a KSI dispatcher located in KAC's facilities.

The evidence reflects that all of the common carrier protestants own and operate insulated trailers for transporting asphalt and its related products. This equipment, as a practical matter, has been dedicated only to the transportation of KAC's products. This is due to the extensive costs involved in cleaning the equipment for use in hauling other products. A witness from KAC testified that, within reason, the protestants' truck equipment has been immediately available to KAC. The equipment has been maintained in Nebraska exclusively for KAC because KAC has been the only substantial Nebraska shipper of asphalt using common carrier motor service.

With respect to KAC's special scheduling needs, neither KSI's witness nor the KAC witness testified to any problems which resulted in loss of sales. KAC's witness stated that existing carriers provide immediate availability and jobsite delivery of KAC's products. KSI's witness testified that the dispatcher's responsibility would be to make sure that delivery occurs on a timely basis. He stated there had been no service complaints or problems in this area.

The record reflects that KSI has a standard training program

for its drivers. There was no complaint as to the capabilities of the common carrier drivers.

It appears that mobile radio unit usage by KAC would be limited by the unit's range. Once out of range, the drivers would contact KAC by telephone. The telephone procedure is presently available to the common carriers.

The KAC witness had no complaint that the protestants refused to store KAC's inventory in the protestants' trailers for later delivery. The evidence reflects that all the protestants' drivers could report delivery site problems to KAC. The KAC witness was unaware of any problems regarding the protestants' ability to return partial loads of excess shipments.

Finally, the KAC witness admitted that, overall, existing common carriers do a "pretty good job" of being confidential. He could not cite an instance where confidentiality was broken. KSI and KAC asserted that confidentiality includes customer information and trade secrets. KAC's trade secrets were not explained at the hearing. The evidence was sufficient to rebut any alleged need to further protect unexplained trade secrets. See *In re Application of Northwestern Bell Tel. Co.*, 223 Neb. 415, 390 N.W.2d 495 (1986), wherein the applicants refused to disclose "trade secrets."

As previously observed, to determine whether issuance of a contract carrier permit is consistent with the public interest, the commission must weigh the effect of granting the permit on both the shipper and protesting common carriers. Here, the evidence shows that KAC will continue to receive the satisfactory service it has received from the protestants if KSI is denied a permit. KAC did not meet its burden of showing how a denial of KSI's application would have an adverse effect upon KAC.

The record reflects that a grant of KSI's application would have an adverse financial impact on the protestants and, consequently, on the public. Protestants collectively have invested in 124 asphalt trailers, primarily to serve KAC. The commission found that

[i]t is not in the public interest for a shipper to encourage common carriers to augment their fleets to the optimum for the shipper, then have that shipper swich [sic] to a

contract carrier and leave the common carriers saddled with thousands and thousands of dollars worth of special equipment.

It is clear that if KSI was granted a permit, traffic would be totally diverted from the existing certified motor common carriers. KAC did not claim it would retain any of its current common carriers if KSI's permit was granted. There is competent evidence to support the commission's finding that the denial of the permit is consistent with the public interest.

The record is clear that the commission acted within the scope of its authority, that its findings are supported by the evidence, and that its order was reasonable and not arbitrary. We have reviewed all of the appellant's assignments of error and find none of them have merit. The commission's denial of KSI's application for a contract carrier permit is affirmed.

AFFIRMED.