In re Application of Gerald K. Kilthau, doing business as Kilthau Transport.
Gerald K. Kilthau, doing business as Kilthau Transport, appellant, v. Molasses Haulers, Inc., appellee.

464 N.W.2d 162

Filed January 4, 1991. No. 88-957.

Marshall D. Becker for appellant.

Bradford E. Kistler, of Heron, Burchette, Ruckert & Rothwell, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

This is an appeal from the Nebraska Public Service Commission in which the appellant, Gerald K. Kilthau, doing business as Kilthau Transport, seeks reversal of an order denying his application for a certificate to transport molasses between points in western Nebraska over irregular routes. We affirm.

In an appeal to the Supreme Court from an order of the Nebraska Public Service Commission (PSC), the only questions to be determined are whether the PSC acted within the scope of its authority and whether the order complained of is reasonable and not arbitrarily made. *In re Application of Slack*, 234 Neb. 704, 452 N.W.2d 538 (1990).

The record reflects that the appellant has operated a trucking business since 1981. Kilthau is authorized by the Interstate Commerce Commission to transport general commodities interstate and by the PSC to transport fertilizer intrastate. In 1987, Kilthau began shipping molasses interstate, between Nebraska and Colorado, for Western Sugar Company (Western), the shipper supporting appellant's application. In the latter part of 1987, Kilthau approached Western with the idea of transporting Western's shipments of molasses intrastate. On December 10, 1987, Kilthau filed his intrastate application with the PSC. Although the application was originally protested by six companies, upon amendment of the application by Kilthau, only Molasses Haulers, Inc., remained a protestant.

On May 19, 1988, the PSC held a hearing on Kilthau's amended application for a permit to transport inedible molasses between all Nebraska points on and west of U.S.

Highway 281. Witnesses in support of the application were Kilthau; Scott Anderson, Western's manager of special product sales; and Jeanette Wilcox, Western's agricultural secretary. Witnesses opposing the application were Conrad Scholl, owner and president of Molasses Haulers, and Edward Foy, Molasses Haulers' operations manager.

Western, whose primary business is sugar manufacturing, operates four Nebraska facilities, which are located in Scottsbluff, Bayard, Mitchell, and Gering. Byproducts of sugar production include three grades of molasses: (1) NS molasses, which is used as part of a second-tier sugar extraction process and which is shipped solely as interplant transfers between Western's Nebraska locations; (2) BE molasses, which is a final byproduct after an additional extraction process and which is shipped from the Scottsbluff facility directly to feed mix vendors, feedlots, and dairies; and (3) CSF molasses, which is produced in a small quantity and which is shipped both interplant and directly to customers. Of the 70,000 tons of molasses manufactured each year, 35,000 tons are sent as interplant shipments. Of the remaining tonnage, 15,000 to 20,000 tons are shipped directly to customers by Western, with the balance shipped to buyers f.o.b. plant.

Witnesses supporting Kilthau's application claimed that (1) there were several times when storage tanks overflowed because of a failure to move a sufficient quantity of molasses the day before; (2) at times only short notice could be given to carriers of molasses shipments as a result of inadequate storage facilities and unpredictable production quantities; (3) there were several incidents when Wilcox was unable to reach Molasses Haulers at the time transportation of molasses was required; (4) there were plans for increased capacity at the Nebraska facilities and the potential for an increased customer base east of U.S. Highway 83, the current geographic boundary authorized for Molasses Haulers; (5) the need existed for the potential flexibility of having a carrier that could handle both interstate and intrastate shipments; and (6) there was enough transportable molasses volume for two carriers.

A certificate of public convenience and necessity is required to engage in common carrier intrastate transportation of

property on Nebraska highways. There is an exemption, not relevant here, for statutorily defined property.

> A certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found after notice and hearing that the applicant is fit, willing, and able properly to perform the service proposed, and to conform to the provisions of sections 75-301 to 75-322.01 and the requirements, rules, and regulations of the commission thereunder and that the proposed service, to the extent to be authorized by the certificate, whether regular or irregular, passenger or property, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied.

Neb. Rev. Stat. § 75-311 (Reissue 1986).

In its order entered July 19, 1988, the PSC found that Kilthau was fit, willing, and able to properly perform the proposed service, and to conform to the applicable statutes, rules, and regulations. However, the PSC denied the application because public convenience and necessity did not require the granting of the authority requested. The PSC held:

> The evidence does not show that public convenience and necessity requires an additional carrier of molasses in the territory in question. Protestant showed that it is operating at only half the capacity that it has operated in the recent past. Authorization of an additional carrier would further diminish the traffic available to protestant thereby impairing its economic well being. The evidence shows that the molasses hauling business is highly seasonal, and the protestant has structured its service to accomodate [sic] the seasonal aspects of the requirements of the supporting shipper. The supporting shipper, according to its testimony, veiws [sic] the applicant "a backup". Naturally it is in the shipper's best interest to have more than one carrier in the field. [I]t has nothing to lose by supporting an additional carrier. The evidence does not show that protestant has fallen short in any significant degree to perform the transportation requirements of the supporting shipper. The application

should be denied.

Following an order entered September 13, 1988, whereby the PSC overruled Kilthau's motion for rehearing, Kilthau timely appealed to this court.

Kilthau's seven assignments of error combine to allege that the PSC finding that public convenience and necessity do not require an additional carrier is contrary to the evidence.

Whether this court agrees or disagrees with the decision of the PSC is immaterial. It is not the province of this court to weigh or resolve conflicts in the evidence or the credibility of witnesses. The Supreme Court does not act as an appellate public service commission but will sustain the action of the PSC if there is evidence in the record to support the findings. *In re Application of Koch Service*, 228 Neb. 631, 423 N.W.2d 767 (1988).

That the PSC acted within the scope of its authority in deciding Kilthau's application is beyond question. The PSC has original jurisdiction and sole power to grant, amend, deny, revoke, or transfer common carrier certificates of public convenience and necessity, and such proceedings are administrative and legislative in character. See *Preisendorf Transp., Inc. v. Herman Bros., Inc.*, 169 Neb. 693, 100 N.W.2d 865 (1960). The determination of issues of public convenience and necessity is one peculiarly within the province of the commission. *In re Application of Amsberry, Inc.*, 220 Neb. 353, 370 N.W.2d 109 (1985).

The final issue is whether the PSC'S order is reasonable and was not arbitrarily made. In determining public convenience and necessity, the deciding factors are (1) whether the operation will serve a useful purpose responsive to a public demand or need, (2) whether this purpose can or will be served as well by existing carriers, and (3) whether it can be served by the applicant in a specified manner without endangering or impairing the operations of existing carriers contrary to the public interest. *Id.*; *Wells Fargo Armored Service Corp. v. Bankers Dispatch Corp.*, 186 Neb. 261, 182 N.W.2d 648 (1971). The issues of public convenience and necessity are ordinarily issues of fact, and where there is evidence in the record to sustain the PSC's order, this court cannot find the order

unreasonable and arbitrary. *In re Application of Amsberry, Inc., supra.*

Of the three public convenience and necessity factors, not all need to be addressed, because an affirmative response to the second factor negates any response to the first factor. Regarding public demand or need, the question of adequacy of service of existing carriers is implicit in the issue of whether public convenience and necessity demand the service of an additional carrier in the field. The existence of an adequate and satisfactory service by motor carriers already in the area is complete negation of public need and demand for added service by another carrier. *Id.*; *Schmunk v. West Nebraska Express*, 159 Neb. 134, 65 N.W.2d 386 (1954); *In re Application of Canada*, 154 Neb. 256, 47 N.W.2d 507 (1951).

The PSC found that Molasses Haulers had not fallen short in any significant degree in performing the transportation requirements of Western. There is no evidence in the record of any substantial shipper of molasses other than Western in the area under consideration.

In support of his application, Kilthau first submitted evidence that there were several times when Western's storage tanks had overflowed because of a failure to move a sufficient quantity of molasses the day before. Wilcox, who testified about these incidents, did not claim that she had requested Molasses Haulers to move a sufficient quantity of molasses the day before any incident to prevent an overflow or that Molasses Haulers failed to perform as requested. She testified that an overflow was not unheard of and would not disappear if Kilthau's or anyone else's application were granted. Both Scholl and Foy testified that Wilcox never held Molasses Haulers responsible for the overflows. Wilcox testified that it was her responsibility to determine how many loads of molasses should be removed from a tank each day.

Wilcox also testified that there were a few times when she could not reach Molasses Haulers at the times she tried, but the consequences of that failure are not clear. Two overflows occurred at night. Wilcox said that on one of those occasions there was an hour's advance notice. She also said that with night overflows, she is not informed until the next morning, after the

tanks have overflowed. No inference may be drawn that Molasses Haulers failed to respond to short notice regarding the two night overflows. Wilcox testified the third incident occurred on Thanksgiving Day or on another holiday. Wilcox testified that she had had difficulty reaching someone from Molasses Haulers and consequently the tank overflowed. She testified that there had been no notice that the tank would overflow as a result of a problem at the plant that caused an overproduction of molasses. Both Scholl and Foy testified that they were available on Thanksgiving Day. It is implicit in the denial of Kilthau's application that the PSC found that appellant's evidence does not show that the overflows were a direct result of Wilcox's failure to reach Molasses Haulers or that the overflows could be attributed to any fault on the part of Molasses Haulers.

Finally, Kilthau introduced evidence to show that there was existing and future business that Molasses Haulers could not handle. In regard to existing business, Wilcox testified that had she had the flexibility of an interstate/intrastate carrier, that carrier would have been used. In regard to future business, Anderson testified that Western could foresee a need for transportation of molasses to feedlots east of Highway 83. He testified there were no signed contracts for that business.

The PSC's order points out that Molasses Haulers, at the time of the hearing, was transporting only half the previous volume of molasses it had transported for Western. The record reflects that during the 1986-87 season, Molasses Haulers received approximately $200,000 gross revenue from its operations, and only $93,000 during the 1987-88 season. The testimony did not include the specific increases in volume anticipated by Western. In the past 3 years, when Western's molasses capacity went up 25 percent, Molasses Haulers' revenue went down. The record further reflects that Western had made no inquiry into the availability of other carriers, nor had it ever requested that Molasses Haulers add more equipment.

The final factor is whether the purpose can be served by an applicant without endangering or impairing the operations of existing carriers contrary to public interest. The PSC

specifically found that an additional carrier would impair the economic well-being of Molasses Haulers, an existing carrier. In its order, the PSC found that Molasses Haulers was operating at only half its capacity and that it had structured its service to accommodate the seasonal aspects of Western's requirements. As previously noted, the record shows that the gross revenue for Molasses Haulers fell more than 50 percent from 1986-87 to 1987-88. At the hearing, Scholl testified that 99 percent of Molasses Haulers' business originates at Western and that its equipment is specifically leased for the molasses season. The result of a loss in Western traffic would be a loss of jobs to Molasses Haulers employees, according to Scholl.

Kilthau failed in his burden of proof to show that public convenience and necessity requires an additional carrier of molasses in the area specified in the application. The order of the PSC is reasonable and not arbitrarily made and is therefore affirmed.

AFFIRMED.